Guy Ruttenberg, Bar No. 207937
guy@ruttenbergiplaw.com
Steve A. Papazian, Bar No. 288097
steve@ruttenbergiplaw.com
RUTTENBERG IP LAW,
A PROFESSIONAL CORPORATION
1801 Century Park East, Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270
Facsimile: (310) 627-2260

*Attorneys for Plaintiff Roxana Towry Russell,
d/b/a Roxy Russell Design*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROXANA TOWRY RUSSELL, d/b/a ROXY RUSSELL DESIGN,<br><br>Plaintiff,<br><br>v.<br><br>WALMART INC., *a Delaware corporation*; WAL-MART.COM USA, LLC, *a California Limited Liability Corporation*,<br><br>Defendants. | Case No. 2:19-cv-05495-MWF-JC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF LAW PROFESSOR MARK MCKENNA**<br><br>Date:   Aug. 24, 2020<br>Time.:   10:00 am<br>Courtroom: 5A<br>Judge:   Hon. Michael W. Fitzgerald |

## I. INTRODUCTION

Plaintiff Roxana Towry Russell, d/b/a Roxy Russell Design ("Ms. Russell") moves to exclude Defendants Walmart Inc. and Wal-mart.com USA, LLC's ("Walmart") *legal* expert, Professor Mark McKenna, from testifying at trial.

*First*, Professor McKenna purports to opine on various issues that are squarely outside of his purported expertise. For example, the Professor goes to great lengths to discuss the market for pendant lamps, lamp-related "design constraints," jellyfish physiology, and compares the design elements of Plaintiff's copyrighted work to the accused product. Professor McKenna's *legal* expertise does not give him carte blanche to testify on these matters. Far from it—Professor McKenna claims no experience, education, or expertise in lamp design, marine biology, or any other remotely relevant discipline. While undoubtedly accomplished as a legal scholar, the Professor has no basis to provide expert testimony outside of his expertise (*i.e.*, the law). Indeed, the Professor's alleged opinions are seemingly based on Google searches and encyclopedias—far afield from any specialized knowledge or experience that would enable him to testify as an expert on this hearsay. As to these issues, Professor McKenna cannot be helpful to the jury because he is no more qualified than the jurors themselves.

*Second*, Professor McKenna improperly opines on the law and pure legal conclusions, such as the "scope of copyright," "copyrightability," and whether certain features on Ms. Russell's lamps are "unprotectable." It is axiomatic that so-called "expert" opinions that merely apply the facts to the law to render legal conclusions or testify about the scope of the law are improper. Simply put, Your Honor is the only legal expert needed in the courtroom.

Professor McKenna should be precluded from testifying at trial or in any proceeding in this action.

## II. FACTUAL BACKGROUND

Ms. Russell is a sculptural artist based in Pasadena, California who designs and sells pendant lamps.  As relevant to this motion, Ms. Russell holds a registered copyright in her Medusa pendant lamp, a sculptural work.  (*See* Dkt. No. 1-1).  Ms. Russell alleges that Walmart has infringed this sculptural work (and others) by, *inter alia*, displaying images of the work on Walmart.com and selling and distributing infringing sculptural works.  (*See* Dkt. No. 1 ¶¶ 39, 47).

Walmart has retained Professor Mark McKenna to opine on the scope of Ms. Russell's copyright in the Medusa sculptural work and on the ultimate issue of the similarity of the copyrighted and accused products.  (*See* Ex. A ¶ 8 ("I have been retained by counsel for Walmart . . . to offer my opinion regarding the unprotectable features of Plaintiff's Medusa lamp and the scope of any copyright in that lamp."), ¶ 12 ("For the reasons stated below, in my opinion many features of the Medusa lamp are unprotectable, and as a result, copyright protection for the lamp is thin.  Further, in my opinion, the accused lamp is clearly not 'virtually identical' to the Medusa lamp.")).  Professor McKenna plans to testify regarding three main areas: (1) the alleged constraints on jellyfish lamp designs and the market for pendant lamps; (2) the scope of copyright; and (3) a comparison of Plaintiff's Medusa lamp and the Accused lamp.  Professor McKenna provides "background" material in the first section of his expert report, using online publications, encyclopedias, and Google searches to describe "common features" of jellyfish lamps and jellyfish physiology more generally.  He then asserts Plaintiff's lamps are "useful articles."  Next, Professor McKenna opines on the "scope of copyright" using his review of public records online.  In the last section, Professor McKenna compares Plaintiff's lamp and the accused lamp, primarily by drawing on Plaintiff's statements and generally commenting on the lamps' structural designs.

As for his background, Professor McKenna reports that he has a J.D. from the University of Virginia School of Law and a B.A. in Economics from the University

of Notre Dame.  (Ex. A ¶ 7).  Professor McKenna's professional experience is limited to the practice, research, and teaching of *law*.  (*See generally id.* at 22).  While a widely published legal scholar, Professor McKenna does not purport to have any experience in product design, marine or jellyfish biology or physiology, or any other discipline related to the issues in his expert report.  (*Id.*).  He also does not purport to be a percipient witness.

Walmart first disclosed Professor McKenna on the last day of fact discovery on Friday July 10, 2020 at 5:05 PM by way of supplemental Rule 26(a) disclosures.  (Ex. B at 4; Papazian Decl. ¶ 3).  These disclosures claimed Professor McKenna was likely to have "[i]nformation regarding copyrightability of the asserted copyrights."  (Ex. B at 4).  On July 14, 2020, counsel for Plaintiff promptly inquired about Professor McKenna, informing Walmart that expert opinions on legal conclusions and ultimate issues of law are improper.  (*See* Ex. C at 1-2).  Even so, a week later, Walmart served Professor McKenna's expert report on July 21, 2020.  (Papazian Decl. ¶ 2).  This motion follows.

III.   **LEGAL STANDARD**

"Pursuant to Federal Rule of Evidence 702, a witness may offer an expert opinion only if he or she draws on some special 'knowledge, skill, experience, training or education to formulate that opinion.'"  *Gable v. Natl. Broad. Co.*, 727 F. Supp. 2d 815, 833 (C.D. Cal. 2010).  "[T]he opinion must be an expert opinion (that is, an ***opinion informed by the witness' expertise***) rather than simply an opinion broached by a purported expert."  *Id.* (citing *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723 (7th Cir.1999)).  "Thus, to determine whether a proposed expert is qualified, the court must examine whether the witness's qualifying training, experience, or specialized knowledge is sufficiently related to the subject matter upon which the witness offers an opinion."  *Gable*, 727 F. Supp. 2d at 833.  "It is not enough that the proposed expert have expertise in an area of knowledge.  The expertise must be relevant to the determination of the facts in issue."  *In re Canvas Specialty Inc.,* 261

B.R. 12, 19 (C.D. Cal. 2001). "The proponent of the expert bears the burden of demonstrating that the expert is qualified." *Gable,* 727 F. Supp. 2d at 833.

Further, expert testimony is permissible only if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine *a fact in issue*." Fed. R. Evid. 702(a); *see Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593 (1993). As such, testimony related to ultimate conclusions of *law* or instructing the jury as to the law is impermissible. *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004). This includes purported expert opinions on "copyrightability." *See, e.g.*, *Leegin Creative Leather Prod., Inc. v. Ayama Indus. Co., Ltd.,* No. CV0012708TJHAJWX, 2008 WL 11339978, at *1 (C.D. Cal. Jan. 11, 2008); *Jonathan Browning, Inc. v. Venetian Casino Resort LLC,* No. C 07-03983 JSW, 2009 WL 1764652, at *1-2 (N.D. Cal. June 18, 2009). "Such opinions invade on the province of the judge." *Gable*, 727 F. Supp. 2d. at 835.

### IV.  ARGUMENT

#### A. Professor McKenna is Not An Expert on, and Lacks Any Qualifications to Opine as to, Any Relevant Subject Matter.

As part of its gatekeeper function, the Court must look to whether Professor McKenna has "knowledge, skill, experience, training, or education" in the relevant subject matter. *Gable*, 727 F. Supp. 2d at 833-34; *see also* Fed. R. Evid 702. Here, Professor McKenna lacks any qualifications to testify on the topics in his report. He should be excluded.

For example, Professor McKenna purports to offer opinions regarding the subjects of lamp design, the market for pendant lamps (including so-called "jellyfish lamps"), and jellyfish physiology and biology. (*See* Ex. A ¶ 13-23). Indeed, the Professor makes broad statements regarding "trends" in pendant lamp markets (¶ 13), "common" features of "hanging jellyfish lamps" (based on Google searches) (¶¶ 15, 17), "characteristics" of "real jellyfish" (¶ 15), the alleged "[m]any features" of Ms.

Russell's lamps that are allegedly "determined at least in part by . . . functionality" (¶ 22), alleged design constraints of "jellyfish lamps" (¶ 24), and specific comparisons of the shape and form of Ms. Russell's lamps compared to the accused products (¶ 28). ***But the Professor has not shown he has any knowledge, skill, experience, training, or education related to any of these matters***. Indeed, Professor McKenna's alleged "expertise" is apparently derived from Google and other internet searches. (*See* Ex. A ¶¶ 13-17).

Professor McKenna's purported expertise in intellectual property law does not permit him to testify regarding matters outside of his expertise. *Gable,* 727 F. Supp. 2d at 833. This precise issue was presented in *Gable*, in which the defendant sought to offer the testimony of Professor Nimmer (*i.e.*, the preeminent copyright scholar) on whether two screenplays were "substantially similar." *Id.* There, the court noted Professor Nimmer's *legal expertise* but then precluded him from testifying on the similarity of two literary works as he "offer[ed] little explanation as to how his legal expertise qualifies him to compare a screenplay and a television series." *Id.* That is, "absent from Nimmer's report and declarations is any indication that Nimmer has experience, knowledge, training, or education in the literary field." *Id.* The same is true here: Professor McKenna does not purport to have any experience, knowledge, training, or education in lamp design, the market for lamps, jellyfish physiology, or any other related field. (*See generally*, Ex. A at 22 (CV)). There is no basis for him to testify as an expert on any of these topics and, accordingly, he should be precluded from doing so at trial. *Castaic Lake Water Agency v. Whittaker Corp.*, No. CV 00-12613 AHM RZX, 2002 WL 34700741, at *5 (C.D. Cal. Oct. 25, 2002).

### B. Professor McKenna Cannot Testify Regarding Legal Conclusions.

The balance of Professor McKenna's expert testimony consists of improper legal conclusions that should also be excluded. For example, Professor McKenna plans to testify that (i) Ms. Russell's Medusa work is a "useful article" (¶ 22); (ii) features and elements of Ms. Russell's lamps are allegedly "unprotectable" (and do

not constitute "protectable expression") (¶ 15); and (iii) that Ms. Russell's "copyright is thin" (¶ 25). In fact, Professor McKenna expressly opines that "the generally bell-shaped upper portion of the lamp," "multi-length texture tentacles," "use of circular design features in the longer tentacles," and "use of white translucent material" are all "**unprotectable**." (Ex. A ¶ 17). Not only does Professor McKenna fail to explain these conclusory opinions, but they consist solely of the application of the law to the facts to render legal conclusions. Indeed, Professor McKenna even claims to dedicate an entire section of his expert report to "Scope of Copyright." (*Id.* at 16-17). This is improper. *Gable*, 727 F. Supp. 2d at 835 ("It is well established that, 'an expert may not state his or her opinion as to legal standards, nor may he or she state legal conclusions drawn by applying the law to the facts.'").

Courts routinely preclude so-called "expert" testimony on issues of law or legal conclusions, and the Court should do so here. *See id.* at 835-836; *Browning*, 2009 WL 1764652, at *1 ("Determinations of copyrightability are indeed questions of law reserved for the judge, and not the jury . . . [and] to the extent Mr. Oman is proffered ***to testify about the copyrightability of the specific light fixtures in this matter or the particular decision on those fixtures, that testimony does indeed pertain to an ultimate issue of law to be decided by the Court***, and not by the jury."); *Leegin*, 2008 WL 11339978 at *1 (precluding testimony on "the ultimate issues of creativity or originality of any work . . . [and] the ultimate issue of substantial similarity under the 'extrinsic' test for substantial similarity.").

In short, legal expert opinions have no place in expert testimony, "no matter how capable [Professor McKenna] is of expressing it to the court if he were counsel in the case." *Ticketmaster Corp. v. Tickets.com, Inc.,* No. CV 99-07654HLH(VBKX), 2003 WL 25781901, at *1 (C.D. Cal. Feb. 10, 2003).

## V. CONCLUSION

For the foregoing reasons, Professor McKenna should be precluded from testifying in this matter.

| | | | |
|---|---|---|---|
| 1 | DATED: July 23, 2020 | By: | */s/ Steve Papazian* |
| 2 | | | Guy Ruttenberg |
| | | | Steve Papazian |
| 3 | | | RUTTENBERG IP LAW, A PROFESSIONAL CORPORATION |
| 4 | | | 1801 Century Park East, Suite 1920 |
| | | | Los Angeles, CA 90067 |
| 5 | | | Telephone: (310) 627-2270 |
| | | | Facsimile: (310) 627-2260 |
| 6 | | | guy@ruttenbergiplaw.com |
| | | | steve@ruttenbergiplaw.com |
| 7 | | | *Attorneys for Plaintiff* |