UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-5495-MWF (JCx)**                **Date:  August 17, 2020**
Title:     Roxana Towry Russell v. Walmart Inc. et al

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

        Deputy Clerk:                        Court Reporter:
        Rita Sanchez                          Not Reported

        Attorneys Present for Plaintiff:      Attorneys Present for Defendant:
        None Present                          None Present

**Proceedings (In Chambers):**   ORDER RE: PLAINTIFF'S MOTION FOR
                                     PARTIAL SUMMARY JUDGMENT [24]

     Before the Court is Plaintiff Roxana Towry Russell's Motion for Partial
Summary Judgment (the "Motion"), filed on December 30, 2019.  (Docket No. 24).
On February 18, 2020, Defendants Walmart Inc. and Wal-Mart.com USA, LLC
(collectively "Walmart") filed their Opposition.  (Docket No. 41).  On March 30, 2020,
Plaintiff filed her Reply.  (Docket No. 52).

     The Motion was noticed to be heard on April 13, 2020.  The Court read and
considered the papers on the motions and deemed the matter appropriate for decision
without oral argument.  *See* Fed. R. Civ. P. 78(b); Local Rule 7-15.  Vacating the
hearing was further required by the Continuity of Operations Plan ("COOP") arising
from the COVID-19 emergency.  The hearing was therefore **VACATED** and removed
from the Court's calendar.

     For the reasons stated below, the Motion is **GRANTED** *in part* and **DENIED** *in
part* as follows:

- The Motion is **GRANTED** to the extent it seeks to establish Plaintiff as
  the owner of the Photographs with standing to sue for copyright
  infringement.  Walmart's arguments regarding Hancock do not raise a
  genuine dispute of fact regarding Plaintiff's ownership and authorship
  over the Photographs.  Additionally, Walmart has offered no evidence that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-5495-MWF (JCx)                    Date:  August 17, 2020
Title:    Roxana Towry Russell v. Walmart Inc. et al

it relied on Plaintiff's ownership of the Photographs to its detriment, or
that Plaintiff defrauded the Copyright Office.

- The Motion is **DENIED** to the extent it seeks to establish as a matter of
  law that Walmart was responsible for posting the Photographs on the
  Walmart Marketplace.  Construing all inferences in Walmart's favor,
  there is a dispute of fact as to how responsible Walmart was for Sunsea,
  acting as a Drop Ship Vendor, listing the Photographs on the Walmart
  Marketplace.  There is evidence on both sides, and it will be up for a jury
  to decide whether Walmart was responsible.

- The Motion is **GRANTED** as to Walmart's First, Second, Third, Fourth,
  Sixth, Seventh, Eighth, and Ninth Affirmative Defenses.  Walmart does
  not oppose the Motion with respect to these affirmative defenses, and the
  Court agrees they fail as a matter of law.

- The Motion is **DENIED** as to Walmart's Fifth Affirmative Defense
  pursuant to the DMCA.  Because the Court determines there is a dispute
  of fact as to Walmart's responsibility for the Photographs being posted on
  the Walmart Marketplace, the Court cannot determine that this defense
  fails as a matter of law.

## I.   __BACKGROUND__

The following facts are based on the evidence, as viewed in the light most
favorable to Walmart as the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 255 (1986) (acknowledging that on a motion for summary judgment,
"[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to
be drawn in [the non-movant's] favor.").  The Court notes any relevant putative
disputes below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-5495-MWF (JCx)**                    **Date:  August 17, 2020**

Title:     Roxana Towry Russell v. Walmart Inc. et al

### A.    **Plaintiff's Photographs**

Plaintiff is a sculptural artist based in Pasadena, California in the business of designing and selling pendant lamps.  (Plaintiff's Separate Statement of Undisputed Facts ("SUF") ¶ 1 (Docket No. 24-2)).  The origins of Plaintiff's lamps trace back to her time as a student at the Art Center College of Design in Pasadena, California, where she began designing a line of pendant lamps that resemble the ethereal and luminescent quality of jellyfish.  (*Id*. ¶ 2).  After Plaintiff's lamps began garnering significant attention and praise, she decided to launch her business (Roxy Russell Design) to bring her lamps to the market.  (*Id*. ¶ 3).  Walmart disputes whether Plaintiff has a business called "Roxy Russell Design."  (Walmart's Statement of Genuine Disputes of Fact ("SGD") ¶ 3 (Docket No. 42)).

Plaintiff sells four different lamps:  Medusa, Polyp, Ophelia, and Hydra.  (SUF ¶ 4).  Plaintiff contends that she holds registered copyrights (Registration No. VA 1-765-599) in the photographs of her pictorial works, including the Medusa and Hydra photographs (the "Photographs").  (*Id*. ¶ 5).  Plaintiff is the author, claimant, and rights holder listed in the Certificate of Registration for Copyright Registration No. VA 1-765-599.  (*Id*. ¶ 6).  Walmart disputes these contentions, arguing that "Plaintiff is not the copyright holder and/or was not the copyright holder at the time of the alleged infringement;" instead, [t]he holder of this copyright is the photographer of the Medusae Collection, Kathryna Hancock."  (SGD ¶¶ 5-6).  The effective date of Copyright Registration No. VA 1-765-599 is March 1, 2011.  (SUF ¶ 7).  Exhibit 9 to the Papazian Declaration contains true and correct copies of Plaintiff's certified Certificates of Registration (Registration No. VA 1-765-599) produced by the Copyright Office, along with the deposits submitted therewith.  (*Id*. ¶ 8).

After she launched her business, Plaintiff's lamps continued to garner significant attention across the world.  (*Id*. ¶ 9).  Plaintiff's lamps have been prominently displayed and/or featured in hit television programs (e.g., Pretty Little Liars, Extreme Makeover), popular clothing stores (e.g., J Crew), and other marquee locations such as the La Rochelle Aquarium in France and the Aquarium of the Pacific in Long Beach, California.  (*Id*. ¶ 10).  Plaintiff sells her lamps to customers both large and small,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-5495-MWF (JCx)                    Date:  August 17, 2020
Title:     Roxana Towry Russell v. Walmart Inc. et al

making individual sales online via her website (www.roxyrussell.com) and large bulk orders for customers like the W Hotel in the Maldives.  (*Id.* ¶ 11).

### B.     The Accused Product Listings

Walmart operates a retail business that sells products, inter alia, online at www.walmart.com (the "Walmart Marketplace").  (*Id.* ¶ 12).  Walmart itself advertises and sells products on the Walmart Marketplace.  (*Id.* ¶ 13).  Third parties, which Walmart calls "Marketplace Sellers", also advertise and sell products on the Walmart Marketplace.  (*Id.* ¶ 14).  Walmart disputes whether it sells products on the Walmart Marketplace, or whether the Walmart Marketplace is ***only*** "for third parties to sell products to consumers."  (SGD ¶ 12-13).

Walmart collects a "referral fee" for products sold by Marketplace Sellers on the Walmart Marketplace.  (SUF ¶ 15).  It collects this fee on a product by-product or sale-by-sale basis.  (*Id.* ¶ 16).

Walmart maintains an online "Help Center" to provide information to customers and answer frequently asked questions related to the Walmart Marketplace.  (*Id.* ¶ 18).  One such "frequently asked question" on Walmart's Help Center is, "Is My Item from a Marketplace Seller?"  (*Id.* ¶ 19).  Walmart's website contains a webpage entitled "Is My Item from a Marketplace Seller?"  (*Id.* ¶ 20).  In response to the frequently asked question "Is My Item from a Marketplace Seller," Walmart states on its website as follows:  "When you purchase an item from a Marketplace Seller, you will see the Seller's name listed in the Order Details within Your Account."  (*Id.* ¶ 21).  In response to the frequently asked question, "Is My Item from a Marketplace Seller," Walmart answers that a customer can "[c]heck the 'Sold & Shipped' label to see if the item is from a Marketplace Seller."  (*Id.* ¶ 22).

The product listings containing the Photographs appeared on Walmart's website. (*Id.* ¶ 23).  Specifically, in or around April 2019, Plaintiff contends that Walmart published listings for products "Sold & shipped by Walmart" that included direct copies of Plaintiff's copyrighted Photographs.  (*Id.* ¶ 24).  Walmart reproduced and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-5495-MWF (JCx)**                    **Date:  August 17, 2020**
Title:      Roxana Towry Russell v. Walmart Inc. et al

publicly displayed exact copies of Plaintiff's Photographs on its website.  (*Id*. ¶ 25).
The Photographs were displayed on Walmart's own website in connection with listings
for products that are "Sold & shipped by Walmart."  (*Id*. ¶ 26).

Walmart disputes that it published the listing of the Photographs and suggests
that the third party retailer, Sunsea Grocery ("Sunsea") published the listing.  (SGD
¶¶ 23-26).  However, it is undisputed that these product listings do not reference any
Marketplace Sellers or Sunsea.  (SGD ¶¶ 27-28).  Additionally, it is undisputed that the
product listings state that the products therein are "Sold & shipped by Walmart" and
include the Walmart logo.  (*Id*. ¶¶ 30-31).

On or about April 3, 2019, in order to further investigate Walmart's conduct,
Plaintiff's counsel purchased product samples from the product listings containing the
Photographs.  (SUF ¶ 32).  The parties dispute whether the products were ***actually***
shipped by Walmart, but the website indicated they were "sold and shipped" by
Walmart.  (SGD ¶¶ 33-34).  Additionally, Emily Ziegler, Head of Partner Performance
Operations Marketplace & Drop Ship Vendor ("DSV") of Walmart E-Commerce,
testified that Sunsea, acting as a DSV, "shipped" the products, but then "Walmart took
possession when we picked it up with our carriers" which is why it was "sold and
shipped by Walmart."  (Deposition Transcript of Emily Ziegler ("Ziegler Transcript")
at 137:8-11 (Docket No. 54-5)).  Ziegler also testified that these products were listed
after Sunsea was terminated as a Marketplace Seller by Walmart in January 2019.  (*Id*.
at 137:16-138:4).

Plaintiff, or her counsel, also purchased products from listings associated with
"INVECH INC" on the Walmart Marketplace.  (SUF ¶ 35).  The email confirmation
from Walmart for those Invech products states the products "Ship[] from INVECH
INC," which was different than the products associated with Sunsea, which indicated
they would be shipped by "Walmart."  (*Id*. ¶¶ 36-38).  The parties also dispute whether
the return policies on the various products indicates how much control Walmart
exercises over these products.  (SGD ¶¶ 39-45).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-5495-MWF (JCx)                    Date:  August 17, 2020
Title:     Roxana Towry Russell v. Walmart Inc. et al

Walmart is able to disable product listings created by its Marketplace Sellers.
(SUF ¶ 46).  In fact, Ziegler testified that Sunsea was blocked from being a
Marketplace Seller by Walmart when Plaintiff purchased the test products around April
2019.  (Ziegler Transcript at 128:11-130:3).  Accordingly, Walmart exercises at least
some control over the content of the Walmart Marketplace, although the parties dispute
the degree of control Walmart exercises.  (SGD ¶ 47).

Before filing suit, on May 20, 2019, Plaintiff sent Walmart a letter discussing
her claims.  (SUF ¶ 48).  In-house counsel to Walmart responded, and the parties
communicated.  (Id. ¶ 49).  The parties' communications continued through August,
although the parties dispute the content and impact of those conversations.  (SGD
¶¶ 50-56).  During these conversations, Walmart contended that the products were
coded "incorrectly" by a third-party vendor, but did not provide sufficient evidence to
support that contention.  (SGD ¶¶ 57-61).

## C.  **Walmart's Affirmative Defenses**

Walmart alleges as its "First Affirmative Defense" that "[t]he Complaint, and
each cause of action within it, fails to state a claim upon which relief can be granted."
(SUF ¶ 120).  Walmart alleges as its "Second Affirmative Defense" that "Plaintiff's
claims are barred by the doctrine of fair use."  (Id. ¶ 121).  However, Walmart offers
no evidence that supports its fair use defense on any of the four factors.  (Id. ¶ 122).
Walmart alleges as its "Third Affirmative Defense" that "Plaintiff's claims are barred,
in whole or in part, by the first sale doctrine."  (Id. ¶ 123).  Walmart offers no facts
supporting its alleged first sale doctrine defense.  (Id. ¶ 124).

While Walmart blames its lack of evidence on ongoing discovery, Walmart does
not raise a genuine dispute as to whether it actually *has* that evidence currently.  (SGD
¶¶ 122, 124).

Walmart alleges as its "Fourth Affirmative Defense" that "Walmart has not
infringed and is not infringing U.S. Copyright Reg. Nos. VA 1-765-597 or VA 1-765-
599."  (SUF ¶ 125).  Plaintiff argues that Walmart offers no facts supporting its alleged

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-5495-MWF (JCx)                    Date:  August 17, 2020
Title:     Roxana Towry Russell v. Walmart Inc. et al

non-infringement defense, while Walmart responds that its arguments are based on Plaintiff's lack of ownership over the copyright over the time of the alleged infringement.  (*Id*. ¶ 126; SGD ¶ 126).  Walmart alleges as its "Fifth Affirmative Defense" that "[t]he claims are invalid, void, and/or unenforceable for failure to overcome the safe harbors set forth in Title 17 of the United States Code, including without limitation Sections 101, 104, 108 and 512  (SUF ¶ 127).  Plaintiff argues that Walmart offers no facts supporting its safe harbor defense, while Walmart argues that Sunsea was involved in the sale and was, actually, solely responsible for the allegedly-infringing listings and subsequent sales.  (*Id*. ¶ 128; SGD ¶ 128).

Walmart's "Sixth Affirmative Defense" and "Seventh Affirmative Defense" are identical and state that "Plaintiff's claims are precluded to the extent that any allegedly infringing products are directly or indirectly supplied by entities having express or implied license to the copyrights-in-suit."  (SUF ¶ 129).  Plaintiff argues that Walmart offers no facts supporting license defense, but Walmart points to alleged licenses, "whether express or implied."  (*Id*. ¶ 130; SGD ¶ 130).  Walmart alleges as its "Eighth Affirmative Defense" that "Plaintiff's allegations concerning the use of the copyrights are de minimis."  (SUF ¶ 131).  Plaintiff contends that uncontroverted evidence shows that Walmart copied the entirety of Plaintiff's Medusa and Polyp Pictorial Works, but Walmart argues that the allegations only relate to $200 worth of sales.  (*Id*. ¶ 132; SGD 132).

Walmart alleges as its "Ninth Affirmative Defense" that "Walmart's investigation of its defenses is continuing, and Walmart expressly reserves the right to allege and assert any additional affirmative defenses under Rule 8 of the Federal Rules of Civil Procedure, and any other defense, at law or in equity, that may now exist or in the future be available based upon discovery and further investigation in this case." (SUF ¶ 133).  Walmart also identifies no facts that support Walmart's right to assert additional defenses.  (*Id*. ¶ 134).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-5495-MWF (JCx)                    Date:  August 17, 2020
Title:     Roxana Towry Russell v. Walmart Inc. et al

## II.   **EVIDENTIARY OBJECTIONS**

The parties advance various objections to the evidence submitted by their counterparts in connection with the Motion.  Specifically, Walmart objects to the evidence filed by Plaintiff in support of the Motion, while Plaintiff objects to the evidence submitted by Walmart in support of its Opposition.  (Docket Nos. 52, 59, 67-7).

None of the objections is convincing.  Many of the objections are garden variety evidentiary objections based on lack of foundation, lack of proper authentication, and hearsay.  While these objections may be cognizable at trial, on a motion for summary judgment, the Court is concerned only with the ***admissibility*** of the relevant ***facts*** at trial, and not the ***form*** of these facts as presented in the Motions.  *See Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006) (making this distinction between facts and evidence, Rule 56(e), and overruling objections that evidence was irrelevant, speculative and/or argumentative).  "If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay."  *O'Banion v. Select Portfolio Servs., Inc.*, No. 1:09-CV-00249-EJL, 2012 WL 4793442, at *5 (D. Idaho Aug. 22, 2012) (citing *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003)).

Therefore, to the extent the Court relies upon evidence to which the parties object, the objections are **OVERRULED**.  To the extent the Court does not, the objections are **DENIED** *as moot*.

## III.   **LEGAL STANDARD**

In deciding a motion for summary judgment under Federal Rule of Civil Procedure 56, the Court applies *Anderson*, *Celotex*, and their Ninth Circuit progeny. *Anderson*, 477 U.S. 242; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-5495-MWF (JCx)                    Date:  August 17, 2020
Title:     Roxana Towry Russell v. Walmart Inc. et al

to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).

The Ninth Circuit has defined the shifting burden of proof governing motions for
summary judgment where the non-moving party bears the burden of proof at trial:

> The moving party initially bears the burden of proving the absence of a
> genuine issue of material fact.  Where the non-moving party bears the
> burden of proof at trial, the moving party need only prove that there is an
> absence of evidence to support the non-moving party's case.  Where the
> moving party meets that burden, the burden then shifts to the non-moving
> party to designate specific facts demonstrating the existence of genuine
> issues for trial.  This burden is not a light one.  The non-moving party
> must show more than the mere existence of a scintilla of evidence.  The
> non-moving party must do more than show there is some "metaphysical
> doubt" as to the material facts at issue.  In fact, the non-moving party must
> come forth with evidence from which a jury could reasonably render a
> verdict in the non-moving party's favor.

*Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1259 n.2 (9th Cir. 2016)
(quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)).  "A motion
for summary judgment may not be defeated, however, by evidence that is 'merely
colorable' or 'is not significantly probative.'"  *Anderson*, 477 U.S. at 249-50.

## IV.   DISCUSSION

"To establish [copyright] infringement, two elements must be proven:
(1) ownership of a valid copyright, and (2) copying of constituent elements of the work
that are original."  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361
(1991).  Plaintiff advances three arguments as to why she is entitled to partial summary
judgment:  (i) there is no dispute of fact that she owns valid copyright in her medusa
and polyp pictorial works; (ii) there is no dispute of fact that Walmart copied her

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-5495-MWF (JCx)**           **Date:  August 17, 2020**
Title:     Roxana Towry Russell v. Walmart Inc. et al

medusa and polyp pictorial works; and (iii) Walmart's affirmative defenses lack sufficient factual support.  (Motion at 11-24).

## A.  <u>Plaintiff Owns Valid Copyrights in the Medusa and Polyp Pictorial Works</u>

As a threshold matter, Plaintiff's copyright registrations are entitled to a rebuttal presumption of validity.  17 U.S.C. § 410(c); *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1075 (9th Cir. 2000) ("Under the copyright laws, the registration of a copyright certificate constitutes prima facie evidence of the validity of a copyright in a judicial proceeding commenced within five years of the copyright's first publication.").  Walmart therefore shoulders the burden of overcoming this presumption of validity. *Id.* ("A certificate of copyright registration, therefore, shifts to the defendant the burden to prove the invalidity of the plaintiff's copyrights.").

Walmart argues that there is a genuine issue of material fact as to whether Plaintiff owns a valid copyright registration because Walmart argues that Kathryna Hancock, the freelance photographer who actually took the Photographs, is the author. (Opposition at 19-22).  Specifically, Walmart argues that Hancock is the author because (1) she testified that she took the Photographs; (2) Plaintiff posted the images on websites, giving Hancock credit; and (3) Hancock has licensed the Photographs to third parties, making her the author (not Plaintiff).  (*Id*. at 19-20).  Because the registration inaccurately lists Plaintiff as the author, and because the work was not a work for hire, Walmart argues that the registration was invalid, and Plaintiff lacks standing to bring this claim.  (*Id*. at 21-24).  The Court disagrees.

The Ninth Circuit has "listed three factors to guide [a court']s determination whether, in the absence of a contract, a contributor is an 'author' for the purpose of joint authorship:  (1) whether the putative author controls the work and is the inventive or master mind who creates, or gives effect to the idea; (2) whether the putative coauthors make objective manifestations of a shared intent to be coauthors; and (3) whether the audience appeal of the work turns on both contributions and the share

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-5495-MWF (JCx)                    Date:  August 17, 2020
Title:     Roxana Towry Russell v. Walmart Inc. et al

of each in its success cannot be appraised.  *Brod v. Gen. Pub. Grp., Inc.*, 32 F. App'x
231, 234–35 (9th Cir. 2002) (internal quotations omitted) (citing *Aalmuhammed v. Lee*,
202 F.3d 1227, 1234 (9th Cir. 2000)).  In many cases, control "will be the most
important factor."  *Id*. at 235.

The Court determines that Walmart have not raised a dispute of fact regarding
whether Plaintiff was the author, or whether Hancock was a co-author, of the
Photographs.  *First*, as noted by Plaintiff in her reply, Hancock clearly testified that
*Plaintiff*, and not her, was the sole author of the Photographs:

Q. Do you believe that you are the author of the Polyp pictorial work?
A. No.
Q. Have you ever told anyone that you were the author of the Polyp pictorial
work?
A. No.
Q. To the best of your knowledge, who is the author of the Polyp pictorial work?
A. Roxy [Plaintiff]. . . .
Q. Do you believe that you are the author of the Medusa pictorial work? . . .
A. No.
Q. Have you ever told anyone that you are the author of the Medusa pictorial
work?
A. No.
Q. To the best of your knowledge, who is the author of the Medusa pictorial
work?
A. Roxy [Plaintiff]

(Deposition Transcript of Kathryna Hancock ("Hancock Transcript") at 162:20-165:8
(Docket No. 52-3)).  As stated by the Ninth Circuit, where "the only two parties with
any possible claim to ownership . . . both believed and intended that [one] own the
copyright," that is strong evidence of the true owner of the copyright.  *Jules Jordan
Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1156 (9th Cir. 2010).  Plaintiff also
submitted a supplemental declaration wherein she stated she (i) exercised control over

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-5495-MWF (JCx)                    Date:  August 17, 2020
Title:      Roxana Towry Russell v. Walmart Inc. et al

the Photographs; (ii) designed the lamps in the Photographs; (iii) set up the photoshoot;
(iv) hung the lamps and chose the background color; (v) made other creative decisions
about the Photographs; and (vi) controlled the editing of the Photographs.  (Reply at
17-18) (citing Supplemental Declaration of Roxana Russell ("Russell Declaration")
¶¶ 4-16 (Docket No. 52-19)).

   **Second**, none of the "facts" raised by Walmart create a material dispute as to the
true owner/author of the Photographs.  With respect to Walmart's argument that
Hancock took the Photographs, this is insufficient to demonstrate sole authorship or
ownership as a matter of law.  *See, e.g.*, *Brod*, 32 F. App.'x 23 at 234 ("In the context
of photography, it has been long established that copyrightable expression includes
selecting and arranging the subject matter, deciding on the composition and camera
angles of the photograph, and determining the lighting as well as when to take the
photograph.") (citing *Ets–Hokin*, 225 F.3d at 1076–77).  Additionally, even if
Walmart's argument was correct legally, Hancock testified that she did not know who
actually took the Photographs.  (Hancock Transcript at 89:23-90:3 ("Q. But who
actually took the photos? . . . A. I don't know.")).

   With respect to Walmart's argument that Plaintiff posted the Photographs online
while giving Hancock credit, Walmart again fails to cite any caselaw suggesting that
such action by Plaintiff demonstrates she is not the owner/author of the Photographs.
And the Court notes that Plaintiff declared that she did not post the Photographs on the
website in question, which is supported by the website's communication stating "we
hope we have not offended you by placing your image" on the website.  (Russell
Declaration ¶¶ 22-23; *see also* Docket No. 52-11 ("We may have placed an image from
your site on our site already to show you what your image will look like in context and
to hopefully get you excited.  We are doing our best to respect the copyright and
permissions of everyone so hopefully we have not offended you by placing your image
first, we just thought this would be the best way for you to understand the beauty and
possibilities [sic] that can exist by displaying your work here.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-5495-MWF (JCx)              Date:  August 17, 2020

Title:      Roxana Towry Russell v. Walmart Inc. et al

With respect to Walmart's argument that Hancock licensed the Photographs to third parties, Walmart does not offer any evidence of a license.  Instead, Walmart's evidence demonstrates that (1) a magazine in Brazil reached out to Hancock via email regarding the Photographs; and (2) Hancock then forwarded the email to Plaintiff and let Plaintiff know that Hancock would tell the journalist that she "forwarded you [Plaintiff] this email."  (Docket No. 40-5).  And Hancock testified that she did not know why the journalist had reached out to her and she no longer had the images.  (Hancock Transcript at 91:16-93:25).  This is insufficient to establish Hancock licensed the Photographs to any third parties.

*Third*, even if there was a dispute of fact as to whether Hancock was a co-author (or even the sole author), the "case law is overwhelming that inadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement." *GoPro, Inc. v. 360Heros, Inc.*, 291 F. Supp. 3d 1060, 1070 (N.D. Cal. 2017), *on reconsideration*, No. 16-CV-01944-SI, 2018 WL 574930 (N.D. Cal. Jan. 26, 2018).  This is true here because Walmart "obviously did not rely on the mistake (if there was one) to [its] detriment" as Walmart (or as it argues, Sunsea) used the Photographs "without a care to whether the[y] were copyrighted and, if so, who owned the copyright" and there is no evidence that Plaintiff "intend[ed] to defraud the Copyright Office."  *Jules Jordan Video, Inc.*, 617 F.3d at 1156.

In other words, Walmart offers no evidence suggesting that it relied on Plaintiff (instead of Hancock) being the author, or that Plaintiff intended to defraud the Copyright Office.  Indeed, the thrust of Walmart's argument is clearly that it is *Sunsea*, and not Walmart, that actually engaged in copyright infringement.  Therefore, even if Walmart raised a genuine material dispute with respect to whether Hancock should be considered a co-owner/author – which it has not – because Walmart offers no evidence of fraudulent intent or detrimental reliance, or that Plaintiff would not also be a co-owner/author, Walmart has not raised a material issue of fact as to the ownership of the copyright or Plaintiff's ability to bring a claim for copyright infringement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-5495-MWF (JCx)**                    **Date:  August 17, 2020**
Title:       Roxana Towry Russell v. Walmart Inc. et al

Because the Court determines that there is no issue of genuine fact regarding the validity of the registration or Plaintiff's ownership of the Photographs, the Court need not analyze whether the 2019 agreement signed by Plaintiff and Hancock should be backdated or applied retroactively.

Accordingly, the Motion is **GRANTED** to the extent is seeks to establish Plaintiff as the valid owner of the copyrights at issue.

### B.      The Court Cannot Determine As a Matter of Law That Walmart Copied Plaintiffs' Photographs

A plaintiff can establish copying through circumstantial evidence by showing "that the infringer had access to the work and that the two works are substantially similar." *Starbucks Corp. v. Glass*, 2-16-CV-03937 ODW (PJW), 2016 WL 6126255, at *4 (C.D. Cal. Oct. 20, 2016).  With respect to the second element, "[b]ecause direct evidence of copying is rarely available a plaintiff may establish Defendant's copying by circumstantial evidence of:  (1) defendant's access to the copyrighted work prior to creation of defendant's work and (2) substantial similarity of both general ideas and expression between the copyrighted work and the defendant's work." *Gracing Inc. v. E.K. Blue, Inc.*, No. CV 16-5107 MWF (SS), 2017 WL 5640516, at *2 (C.D. Cal. June 28, 2017) (citing *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987)). Alternatively, "[a]bsent evidence of access, a 'striking similarity' between the works may give rise to a permissible inference of copying."  *Id.*  A finding of striking similarity is appropriate when "the works are virtually identical."  *Id.* (citing *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 988 (9th Cir. 2017)).  Such a finding is also appropriate if the works "are so strikingly similar as to preclude the possibility of independent creation,"  *Id.* (citing *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1052 (C.D. Cal. 2010)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-5495-MWF (JCx)**                    **Date:  August 17, 2020**
Title:      Roxana Towry Russell v. Walmart Inc. et al

The Court determines (and Walmart does not dispute) that the pictures posted to the Walmart Marketplace are strikingly similar to Plaintiff's Photographs, and thus the Court need not undertake an analysis with respect to access:






UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-5495-MWF (JCx)**                    **Date:  August 17, 2020**

Title:      Roxana Towry Russell v. Walmart Inc. et al

Instead, Walmart disputes that it is responsible for posting the infringing content, claiming that "a third party Marketplace Retailer, Sunsea, posted the allegedly infringing images at its own direction."  (Opposition at 11) (citing Declaration of Emily Ziegler ("Ziegler Declaration") ¶¶ 20-26 (Docket No. 41-1)).  Indeed, according to Walmart, "Walmart was not actively involved in Sunsea's actions regarding the posted images, and removed them upon notification by Plaintiff."  (*Id*. (citing Ziegler Declaration ¶¶ 28-32.  Instead, "Walmart merely provided a platform for Sunsea to sell the lamps through passive, automated processes" and "exerted no control over Sunsea's actions" only becoming "aware of the images when Plaintiff's counsel sent a copy of a yet-to-be-filed complaint and an invitation to engage in settlement negotiations."  (*Id*.) (citing Ziegler Declaration ¶ 13-19; 27).

While this is a close call, construing ***all inferences*** in Walmart's favor, the Court determines that Walmart has raised a genuine dispute of material fact as to whether it is responsible for the posting of the Photographs.  On the one hand, Plaintiff is correct that Sunsea was terminated as a Marketplace Seller prior to the alleged infringing Photographs being posted on the Walmart Marketplace.  (Ziegler Transcript at 128:11-130:3).  Accordingly, to the extent Ziegler's Declaration discusses Walmart's role relating to posts by ***Marketplace Sellers***, those discussions are irrelevant.  On the other hand, Sunsea was still a "Drop Ship Vendor" when the Photographs were posted to the Walmart Marketplace.  And Ziegler's declaration could be read to suggest that, regardless of Sunsea's technical status at the time of the postings, it "posted on the Walmart Retailer Marketplace the photographs that Plaintiff claims infringe her copyright" and "created and uploaded the product listings."  (Ziegler Declaration ¶¶ 20, 22).  Ziegler also declared that "Sunsea took these actions without any involvement or input from Walmart; Walmart merely facilitated Sunsea's actions as a passive e-commerce platform."  (*Id*. ¶ 24).  While Ziegler also testified that she did not know for "certain" that Walmart did not have any involvement in the challenged listings, that does not render her declaration invalid.  (Ziegler Transcript at 106:6-107:2).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-5495-MWF (JCx)                    Date:  August 17, 2020
Title:      Roxana Towry Russell v. Walmart Inc. et al

Accordingly, while it seems clear that Sunsea did not upload the Photographs as a "Marketplace Seller," Ziegler's Declaration could be read to state that Sunsea uploaded the Photographs as a "Drop Ship Vendor," and that Walmart played no role in uploading the Photographs.  While Plaintiff argues that some of Ziegler's Declaration (including that Sunsea was a "Marketplace Seller") is directly contradicted by her deposition, that does not render Ziegler's ***entire declaration*** void.  While Plaintiff raises legitimate concerns regarding Ziegler's personal knowledge regarding some of these topics (and the fact that the Photographs were listed as "Sold and Shipped by Walmart") these are issues to be dealt with on cross examination in front of finders of fact, not something that should be decided by the Court as a matter of law.

Accordingly, construing all inferences in Walmart's favor, the Court cannot determine as a matter of law that Walmart was sufficiently responsible for posting the Photographs on the Walmart Marketplace.  It will be for a jury to decide whether the contradictions between Ziegler's deposition and her declaration make her an unreliable witness.  The Motion is **DENIED** to the extent it sought to determine Walmart was responsible for the copying of Plaintiffs' Photographs.

## C.    Walmart's Affirmative Defenses

Finally, Plaintiff argues that all nine of Walmart's affirmative defenses fail. (Motion at 18-24).  Walmart only appears to respond with respect to its Fifth Affirmative Defense pursuant to the Digital Millennium Copyright Act ("DMCA"). (*See generally* Opposition; Reply at 3).  Accordingly, the Motion is **GRANTED** with respect to Walmart's First, Second, Third, Fourth, Sixth, Seventh, Eighth, and Ninth Affirmative Defenses.

With respect to Walmart's Fifth Affirmative Defense pursuant to the DMCA, Section 512(c) of the Copyright Act establishes a safe harbor from copyright liability for a service provider's "storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider."  17 U.S.C. § 512(c).  Eligibility for safe harbor protection is dependent on the service provider

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-5495-MWF (JCx)**                    **Date:  August 17, 2020**
Title:     Roxana Towry Russell v. Walmart Inc. et al

complying with certain requirements.  17 U.S.C. § 512(i); *Perfect 10, Inc. v. CCBill, LLC*, 488 F.3d 1102, 1109 (9th Cir. 2007) (holding that "to be eligible for any of the four safe harbors . . . a service provider must first meet the threshold conditions set out in § 512(i)").  Service providers must also comply with the requirements of Section 512(c).

Specifically, in order to have immunity under the DMCA, Walmart must show that (i) it lacks actual knowledge of infringement or of facts making infringement apparent (17 U.S.C. § 512(c)(1)(A)); (ii) if Walmart has the "right and ability to control" the infringing activity of its users, it "does not receive a financial benefit directly attributable to the infringing activity" (17 U.S.C. § 512(c)(1)(B)); (iii) upon receipt of a statutorily compliant notice of claimed infringement, Walmart "responds expeditiously to remove, or disable access to," the allegedly infringing material ((17 U.S.C. § 512(c)(1)(C)); (iv) Walmart has "a designated agent to receive notifications of claimed infringement" (17 U.S.C. § 512(c)(2)); and (v) the service provider has adopted, reasonably implemented, and informed users of a repeat infringer policy (17 U.S.C. § 512(i)(1)(A)).

As a "threshold for the § 512(c) safe harbor, Walmart must show that the infringing material was stored 'at the direction of the user.'"  *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1052 (9th Cir. 2017).  Additionally, for the purposes of the safe harbor, "[r]ight and ability to control" involves "something more than the ability to remove or block access to materials posted on a service provider's website." *Id*. at 1058.  "The service provider does 'something more' when it exerts high levels of control over activities of users." *Id*. (internal quotations omitted).  The service provider exerts "high levels of control," for example, when it, "prescreens sites, gives them extensive advice, prohibits the proliferation of identical sites," provides "detailed instructions regard[ing] issues of layout, appearance, and content," and ensures "that celebrity images do not oversaturate the content." *Id*. (alterations in the original).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-5495-MWF (JCx)                    Date:  August 17, 2020
Title:     Roxana Towry Russell v. Walmart Inc. et al

For the reasons discussed above, the Court determines there is a legitimate dispute of fact as to whether (i) the infringing material was stored at the direction of Sunsea or Walmart; (ii) Walmart had knowledge of the infringement or facts making infringement apparent; and (iii) Walmart has the "right and ability to control" the infringing activity of its users, which is crucial because Walmart does not dispute it receives a financial benefit directly attributable to the infringing activity.  Accordingly, summary judgment on the DMCA defense is not appropriate.

The Court denies summary judgment on the DMCA defense despite the strength of the following arguments:

*First*, as pointed out by Plaintiff, Walmart relies exclusively on the Ziegler Declaration to establish that Walmart has a repeat infringer policy.  (Opposition at 17 (citing Ziegler Declaration ¶ 18)).  However, Ziegler testified at her deposition that she lacks any "personal knowledge about Walmart's repeat infringer policy," had no involvement in creating the policy, was not sure whether it was a written document, and her role was completely separate.  (Ziegler Transcript at 124:15-127:6).  This discrepancy raises concerns as to whether Ziegler either could competently testify regarding Walmart's repeat infringer policy or whether a typical jury (as opposed to any rational jury) would find her testimony persuasive.

*Second*, Ziegler testified that she was unaware of any supplier Walmart had terminated for repeated infringement, the "mechanisms and tools" Walmart uses to track repeat infringers, "the types of records Walmart keeps to keep track of repeat infringers," "how many times a marketplace seller must infringe . . . before they're terminated," whether Walmart tracks a terminated "supplier's email address or other information to ensure that they're not allowed to open up a new account in the future," and "how many times a supplier needs to infringe or be accused of infringement" before the supplier will be terminated.  (*Id*. at 125:5-15, 155:6-19, 158:11-20).  Again, this lack of awareness raises legitimate concerns regarding the propriety of Walmart's DMCA defense.  *Compare Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 618 (9th Cir. 2018) (determining there was "no triable issue of fact as to whether"

---

**CIVIL MINUTES—GENERAL**                                    **19**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-5495-MWF (JCx)                  Date:  August 17, 2020
Title:     Roxana Towry Russell v. Walmart Inc. et al

defendant had "adopted and reasonably implemented its policy of terminating repeat infringers in appropriate circumstances" because the "evidence in the record shows that [defendant] terminated between 1,320 and 1,980 users for alleged copyright infringement and that only nine alleged repeat infringers had slipped through"), *cert. denied*, 139 S. Ct. 419 (2018) (internal citations and quotations omitted).

***Third***, as discussed above, some of the discrepancies between Ziegler's deposition and her declaration raise concerns as to whether she can serve as a competent witness with respect to Walmart's responsibility in connection with posting the Photographs.  While the Court determines that a genuine issue of material fact has been raised by Walmart, that does not mean that Walmart will necessarily convince the finder of fact that the DMCA defense bars Plaintiff's claims.

Nonetheless, the standard here is whether any rational jury could find for Walmart on these facts.  Accordingly, the Motion is **DENIED** with respect to Walmart's DMCA defense.

## V.    CONCLUSION

For the reasons discussed above, the Motion is:

- **GRANTED** to the extent it seeks to establish Plaintiff as the owner of the Photographs.

- **DENIED** to the extent it seeks to establish Walmart was responsible for posting the Photographs on the Walmart Marketplace.

- **GRANTED** as to Walmart's First, Second, Third, Fourth, Sixth, Seven, Eighth, and Ninth Affirmative Defenses.

- **DENIED** as to Walmart's Fifth Affirmative Defense.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  **CV 19-5495-MWF (JCx)**                    **Date:**  **August 17, 2020**
Title:      Roxana Towry Russell v. Walmart Inc. et al

IT IS SO ORDERED.