Guy Ruttenberg, Bar No. 207937
guy@ruttenbergiplaw.com
Steve A. Papazian, Bar No. 288097
steve@ruttenbergiplaw.com
RUTTENBERG IP LAW,
A PROFESSIONAL CORPORATION
1801 Century Park East, Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270
Facsimile: (310) 627-2260

*Attorneys for Plaintiff Roxana Towry Russell,
d/b/a Roxy Russell Design*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROXANA TOWRY RUSSELL, d/b/a ROXY RUSSELL DESIGN,<br><br>Plaintiff,<br><br>v.<br><br>WALMART INC., *a Delaware corporation*; WAL-MART.COM USA, LLC, *a California Limited Liability Corporation*<br><br>Defendant. | Case No. 2:19-cv-05495-MWF-JC<br><br>**PLAINTIFF'S OMNIBUS OPPOSITION TO WALMART'S "AMENDED" MOTIONS *IN LIMINE* NOS. 1-5**<br><br>PTC Date: June 27, 2022<br>Time: 11:00 am<br>Courtroom: 5A<br>Judge: Hon. Michael W. Fitzgerald<br>Trial Date: July 26, 2022 |

PLAINTIFF'S OMNIBUS OPP. TO WALMART'S "AMENDED" MILS

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................. 1

II. THE COURT HAS NOT AUTHORIZED WALMART TO FILE ADDITIONAL BRIEFING ON ITS MOTIONS *IN LIMINE* .......................... 2

III. WALMART'S "AMENDED" MOTIONS STILL LACK MERIT ............... 4

    A. Walmart's "Amended" Motion *in Limine* No. 1 ......................................... 4

    B. Walmart's "Amended" Motion *in Limine* No. 2 ......................................... 6

    C. Walmart's "Amended" Motion *in Limine* No. 3 ......................................... 9

    D. Walmart's "Amended" Motion *in Limine* No. 4 ...................................... 10

    E. Walmart's "Amended" Motion *in Limine* No. 5 ...................................... 13

IV. CONCLUSION ............................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adobe Sys. Inc. v. Johnson*,
  No. CV146313FMOVBKX, 2015 WL 12681313 (C.D. Cal. Apr. 27, 2015) .... 9

*Adobe Sys., Inc. v. Tilley*,
  No. C 09-1085 PJH, 2010 WL 309249 (N.D. Cal. Jan. 19, 2010) ...................... 9

*Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*,
  923 F. Supp. 2d 1245 (S.D. Cal. 2013) .............................................................. 12

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003) ............................................................................................. 7

*Duncan v. Stuetzle*,
  76 F.3d 1480 (9th Cir. 1996) .............................................................................. 9

*Gamma Audio & Video, Inc. v. Ean-Chea*,
  11 F.3d 1106 (1st Cir. 1993) .............................................................................. 4

*Maritech Marine Servs., LLC v. Bay Welding Servs., Inc.*,
  No. 3:20-CV-00231-SLG, 2022 WL 138677 (D. Alaska Jan. 14, 2022) .......... 15

*Marquis Mobile Dental Servs., LLC v. Abercrombie*,
  No. 3:08-1206, 2009 WL 10694950 (M.D. Tenn. Mar. 11, 2009) ...................... 7

*Microsoft Corp. v. Ricketts*,
  No. C 06-06712 WHA, 2007 WL 1520965 (N.D. Cal. May 24, 2007) .............. 9

*Perfect 10, Inc. v. Giganews, Inc.*,
  No. CV 11-07098-AB (SHX), 2014 WL 10894452 (C.D. Cal. Oct. 31, 2014) 14

*Ralston-Purina Co. v. Bertie*,
  541 F.2d 1363 (9th Cir. 1976) .......................................................................... 14

*Transgo Inc. v. Ajac Transmission Parts Corp.*, 7
  68 F.2d 1001 (9th Cir. 1985) .............................................................................. 8

*Washington v. Essex*,
    No. 18-16644, 2021 WL 4922373 (9th Cir. Oct. 21, 2021) .............................. 14

## I. INTRODUCTION

Plaintiff reluctantly files this Omnibus Opposition to Walmart's improper "amended" motions *in limine*. The parties completed briefing their respective motions *in limine* back in September 2021. Those fully briefed motions remain on the docket. Indeed, Walmart filed nearly 50 pages of briefing in support of its five motions *in limine* back on September 13, 2021, which Plaintiff painstakingly opposed within a week on September 20, 2021. No further briefs are permitted under the Court's Standing Order. In February 2022, the parties even filed a stipulation pointing back to their original motion *in limine* briefing and acknowledging that no further briefing would be filed. (*See* Dkt. No. 260). Even so, Walmart now tries to take advantage of another COVID continuance to help itself to additional briefing, filing yet another 50 pages on June 6, 2022, all without leave of Court or advanced notice to Plaintiff.

In tacit acknowledgment of its misconduct, Walmart coyly suggests its briefs are mere "amended" versions of its September 13, 2021 briefs. But with the benefit of Plaintiff's Oppositions in-hand, Walmart has substantially re-cast its arguments, changed its requested relief, and, in one instance, written an entirely new (sixth) motion. For example, while Walmart claims its "amended" MIL 2 purports to address the "same subject matter" as its original motion and allegedly just "extends the Motion's request for relief," (Dkt. No. 269 at Notice of Motion), nothing could be further from the truth. The original motion sought to exclude evidence of "Sunsea's Other Bad Acts"; the "amended" motion seeks an order adjudicating all of Plaintiff's unfair competition and punitive damages claims. Making matters worse, Walmart never withdrew its original motions—instead, it filed an omnibus "Notice re Motions *in Limine*" in which it points to **both** its original **and** amended briefing. (Dkt. No. 282). Walmart created a 100-page mess and left it to Plaintiff and the Court to sort out.

Regrettably, this is par for the course and only the latest step in Walmart's

scorched-earth litigation campaign. If this were truly a case about "four sales," as Walmart repeats *ad nauseam*, it sure is not acting like it.

Walmart's motions (new, old, and otherwise) should be denied.

## II. THE COURT HAS NOT AUTHORIZED WALMART TO FILE ADDITIONAL BRIEFING ON ITS MOTIONS *IN LIMINE*.

Walmart has violated nearly every aspect of the Court's clear Orders on motion in *limine* procedure.

First, each side is permitted one brief per motion, limited to 10 pages. (Dkt. No. 23 at 6). Here, the parties filed their briefs with respect to Walmart's motions *in limine* on September 13 and 20, 2021. (*See* Dkt. Nos. 182-83, 190-92, 202-03, 207-09). Nothing in the rules allows a party to file additional briefing or somehow "amend" its prior filings as Walmart does here. Walmart acknowledged this when the parties simply re-noticed their prior motions in February to align with the Final Pretrial Conference date. (Dkt. No. 260).

Second, read together, Local Rule 7-3 and the Court's Order re Jury Trial require counsel to "meet and confer with opposing counsel . . . to attempt to reach an agreement that would obviate the motion" at least seven days before the motion is filed. But far from complying with these rules, Walmart hid its intention to "amend" its MILs until the business day before they were filed. As a result, the parties only "conferred" on these motions the ***morning they were filed***, and even then Walmart could only offer vague suggestions about what was changing in the motions, broadly claiming it was adding some "new arguments." (Declaration of Steve Papazian ("Papazian Decl.") ¶ 11). As it turns out, redlines of these motions show substantial re-writes. (*See generally* Exs. A-E). In one case (MIL 2), the substance of the motion and the relief it seeks are entirely new—having read Plaintiff's oppositions, Walmart just decided to file a new motion. (*See* Ex. B).

Third, MILs should "address specific issues (e.g., *not* 'to exclude all hearsay')" and should "not be disguised motions for summary adjudication of

2   2:19-cv-05495-MWF-JC
PLAINTIFF'S OMNIBUS OPP. TO WALMART'S "AMENDED" MILS

2                                                                 2:19-cv-05495-MWF-JC
PLAINTIFF'S OMNIBUS OPP. TO WALMART'S "AMENDED" MILS

issues." (Dkt. No. 23 at 6-7). Walmart grossly violates these basic rules. For example, Walmart's MIL 2 asks the Court to vaguely exclude "irrelevant Lanham Act damages." (Dkt. No. 269). Likewise, Walmart's MILs 1 and 2 seek substantive rulings on a wide range of merits issues.[1] For instance, Walmart's MIL 2 asks the Court to rule that Plaintiff's unfair competition claims are **preempted** as a matter of law and to adjudicate Plaintiff's punitive damages claim. (Dkt. No. 269). Walmart's papers are replete with contentions parroting the summary judgment standard. (Dkt. No. 268 (MIL 1) at 5:17-18 ("There is no evidence that the 'Medusa' and 'Polyp' pictorial works live their own copyright life."), 6:10-11 ("There is no evidence that the photographs have any independent economic value . . ."); Dkt. No. 269 (MIL 2) 5:22-23 ("Plaintiff cannot succeed in her trademark claims as a matter of law."), 10:13-15 ("The Court should exclude any theories, evidence, or references suggesting an entitlement to any Lanham Act 'actual damages' or 'corrective advertising' or generally for punitive damages, when none are available as a matter of law."). Walmart's statements are obviously disputed and forcing Plaintiff to respond to thinly veiled Rule 56 motions in one week is an abuse of the pretrial process.[2]

Walmart's lone justification of its conduct is that the Court "previously vacated the Final Pretrial Conference and hearing on Motions in Limine and re-set new deadlines." (*See, e.g.*, Dkt. No. 268 at Notice of Motion). But the Court's

---

[1] As explained below, Walmart actually raised some of these very arguments in its motion for summary judgment and **lost**.

[2] Nor are Walmart's substantive MILs 1 and 2 the types of motions *in limine* that might properly seek exclusion of claims and theories at trial based on the Court's prior summary judgment orders. First, with respect to Plaintiff's MSJ, the Court obviously did not limit Plaintiff's claims in any respect. (Dkt. No. 135). Second, with respect to Walmart's MSJ, the Court denied that motion "in its entirety," leaving no room for Walmart to somehow argue that the Court adjudicated or limited any of Plaintiff's claims or theories in this case. (Dkt. No. 162 at 24).

1 Orders did not strike the prior motion *in limine* briefing, nor did the parties ask the Court to do so. The Orders just provide a new "**last day**" that the parties could file motions *in limine*—*i.e.*, "at least three weeks before the final pretrial conference"—if they had not already done so. (Dkt. No. 23 at 6). Walmart already filed its motions "at least three weeks" before the final PTC.

Walmart's motions should be summarily denied.

### III. WALMART'S "AMENDED" MOTIONS STILL LACK MERIT.

Even if the Court were to consider Walmart's "amended" arguments, they should still be rejected as each new argument lacks merit. Given that Walmart has not withdrawn any of its original briefing, Plaintiff relies on its prior oppositions, which it supplements below to address Walmart's new, "amended" arguments.

#### A. Walmart's "Amended" Motion *in Limine* No. 1

Walmart's motion *in limine* should be denied for all of the reasons stated in Plaintiff's opposition. (Dkt. No. 202). In short, Walmart's motion re-hashes its failed summary judgment arguments and is wrong on the merits. Plaintiff alleged and disclosed infringement of five different works, including the original Complaint and throughout the litigation, and there is no basis for Walmart to whittle down Plaintiff's claims through a motion *in limine*. Walmart also fails to understand that the number of copyright registrations is not necessarily the same thing as the number of "works" for purposes of assessing statutory damages.[3]

Walmart's "amended" MIL 1 further stretches Walmart's already-strained arguments. Walmart now resorts to all out distortion of the Court's prior rulings. For example, Walmart insists that the Court's ruling on Walmart's MSJ "only considered whether Walmart infringed the Medusa lamp" and that "[no other lamps

---

[3] *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1117 (1st Cir. 1993) ("copyrights in multiple works may be registered on a single form, and thus considered one work *for the purposes of registration . . .* while still qualifying as separate 'works' for purposes of awarding statutory damages" (emphasis in original)).

were considered" in that motion. (Dkt. No. 182 at 2:10-13). But that's because Walmart's MSJ only challenged infringement as to the Medusa sculptural work, (Dkt. No. 133 at 13-16), which Plaintiff pointed out in opposing Walmart's MSJ (Dkt. No. 154 at 5-7). Walmart's failure to challenge infringement as to the other sculptural works does not preclude Plaintiff from asserting the unchallenged sculptural works, which Plaintiff disclosed from the outset (and at all stages) of the case. This is especially true since the Court ***denied*** Walmart's MSJ "in its entirety." (Dkt. No. 162 at 24).

Further twisting the facts, Walmart contends that "[i]n order to preserve the validity of the '599 Registration for the photographs, the Court found that the 'Medusa and Polyp Pictorial Works' were taken at a single sitting for the same purpose and received a single copyright registration." (Dkt. No. 268 at 7). Walmart likewise claims that "[p]ursuant to the Court's ruling [on Plaintiff's MSJ], Plaintiff is limited to a single award for the infringement of the 'Medusa and Polyp pictorial works.'" These are blatant and obvious mischaracterizations of the Court's Order. The Court did not go out of its way to "preserve the validity" of any copyrighted works—the Court held that Walmart failed to "create a material dispute as to the true owner/author of the Photographs." (*See* Dkt. No. 135). The Court made no finding that Plaintiff's pictorial works constitute a single work, nor did the Court comment on the manner in which they Photographs were registered.

Walmart's related "amended" argument that Plaintiff's pictorial works constitute a single work for purposes of statutory damages, is not only a summary judgment argument that the Court already rejected (*see* Dkt. No. 133 at 21 (Walmart arguing "Plaintiff may elect only one award of statutory damages for the alleged infringement of the Photographs."); Dkt. No. 163 at 23 ("The MSJ is DENIED in its entirety.")), but also plainly false. Indeed, Walmart claims "[t]here is no evidence that the 'Medusa' and 'Polyp' pictorial works live their own copyright life." (Dkt. No. 268 at 5). Walmart also adds that "[t]here is no evidence that the

photographs have any independent economic value, as the only economic value at issue in the case is the lamps sold by Sunsea." (*Id.* at 6). Both Ms. Russell and Mr. Blum will testify about how each of Ms. Russell's five works have independent economic value and Plaintiff should not be required to marshal that evidence here in response to an undisclosed, improper motion.[4] Again, Walmart's "no evidence" argument is not a proper motion *in limine*.

### B. Walmart's "Amended" Motion *in Limine* No. 2

As mentioned, Walmart's MIL 2 is entirely new. Rather than seeking to exclude reference to "Sunsea's Other Bad Acts" per Walmart's original MIL 2 (and still reflected on the docket), Walmart now asks the Court to "exclude evidence and arguments regarding any irrelevant damages." (Dkt. No. 269 at Notice of Motion). In fact, on June 3, Walmart stated that it "intends to withdraw its Motion in Limine No. 2, ECF No. 183, and substitute another in its place." (Ex. F at 1). But Walmart never did so—it just vaguely claims to have "amended" its prior motion. *See* L.R. 7-15 ("moving party who intends to withdraw a motion before the hearing date" must "file and serve a notice of withdrawal of the motion . . . immediately."). Walmart's tactics and substantive requests should be roundly rejected. In any event, Walmart seems to acknowledge that its previous motion *in limine* should be denied.

Walmart's new MIL 2 is equally without merit. For context, in addition to copyright infringement, Plaintiff has alleged claims for (i) false designation of origin under the Lanham Act, (ii) false advertising under the Lanham Act, (iii) common law unfair competition, and (iv) violation of section Cal. Bus. & Prof. Code § 17200. Plaintiff's false designation of origin claim is based on Walmart's use of her distinctive images to sell counterfeit products. (Dkt. No. 276 at 12-13). Relatedly, Walmart's use of Plaintiff's images to sell its inferior products also renders its advertisements literally false. With respect to common law unfair

---

[4] Plaintiff pointed to such evidence in opposing Walmart's MSJ on this issue. (*See* Dkt. No. 154 at 38).

competition, Walmart passed off its goods as those of Plaintiff, using images of Plaintiff's products and Plaintiff's reputation to sell its own products. These actions also constitute unfair competition under section 17200.

Walmart sought summary judgment on all of Plaintiff's "unfair competition" claims. The Court addressed those arguments and *denied* Walmart's motion in full. (Dkt. No. 162 at 22-24). Through its second "amended" MIL, Walmart distorts these claims and, as Plaintiff understands it, makes four arguments.

***First***, Walmart argues that Plaintiff's Lanham Act claims (and related damages) are supposedly foreclosed because Plaintiff is not asserting a "trademark." This improper argument for summary adjudication of Plaintiff's claims is nonsensical—Walmart misrepresents the law. "While much of the Lanham Act addresses the registration, use, and infringement of trademarks and related marks, § 43(a), 15 U.S.C. § 1125(a) is one of the few provisions that ***goes beyond trademark protection***." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28–29 (2003) (emphasis added). As such, courts have rejected Walmart's argument that a "trademark" is a prerequisite to a Section 43(a) claim. *See Marquis Mobile Dental Servs., LLC v. Abercrombie*, No. 3:08-1206, 2009 WL 10694950, at *2 (M.D. Tenn. Mar. 11, 2009) ("Simply put, § 43(a)(1) is not limited to the protection of trademark holders and the existence of a trademark is not a necessary prerequisite to a § 43(a) action.") (cleaned up); *Corker v. Costco Wholesale Corp.*, No. C19-0290RSL, 2019 WL 5887340, at *2 (W.D. Wash. Nov. 12, 2019) ("[Defendant's] first argument, that one or all of the plaintiffs must have a protectable trademark in the word Kona in order to bring a Lanham Act claim, is incorrect in the context of this case."). The cases cited by Walmart reference trademarks because trademarks were at issue in those cases, not because they are required under section 43(a).

***Second***, Walmart argues that *Dastar* precludes "Plaintiff's Section 43(a) claims." (Dkt. No. 269 at 4). Not so. The Supreme Court in *Dastar* held that failure

to give proper attribution to an author of a film cannot support a false designation of origin claim because the "origin" of goods in section 43(a) concerns "the producer of the ***tangible goods*** that are offered for sale, and not to the ***author of any idea***, concept, or communication embodied in those goods." 539 U.S. 23, 36-37. That is, the author to an expired copyrighted work cannot re-cast his expired copyright claim as falsely designating the creative origin of that work. *Id.*

Here, Ms. Russell sells her tangible goods directly to consumers. The evidence will show that Walmart deceived consumers into believing it was selling Ms. Russell's tangible goods when Walmart used Ms. Russell's images to sell its goods. Ms. Russell will testify and present evidence showing that potential customers of her products associate her distinctive images with her as the source of those goods. Ms. Russell's false designation of origin claim is ***not*** premised on Walmart failing to correctly disclose her authorship or conception of the relevant works to consumers. "Preemption" does not apply.

***Third***, Walmart argues that Plaintiff is not entitled to punitive damages as a matter of law. (Dkt. No. 269 at 7-8). Again, this is obviously a summary judgment issue. On the merits, the Ninth Circuit has confirmed that punitive damages are available under a common law unfair competition claim. *See Transgo Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1025 (9th Cir. 1985) (affirming award of punitive damages on unfair competition claims); *Duncan v. Stuetzle*, 76 F.3d 1480, 1490 (9th Cir. 1996) ("We are aware of no authority which suggests that [Cal. Civ. Code § 3294(a) regarding punitive damages] may not be applied to common law unfair competition claims."). Walmart's policy arguments about windfalls and circumvention of the Copyright Act are not supported in the factual record or the case law. *See Adobe Sys., Inc. v. Tilley*, No. C 09-1085 PJH, 2010 WL 309249, at *5 (N.D. Cal. Jan. 19, 2010) (no mention of punitive damages); *Microsoft Corp. v. Ricketts*, No. C 06-06712 WHA, 2007 WL 1520965, at *4 (N.D. Cal. May 24, 2007) (same); *Adobe Sys. Inc. v. Johnson*, No. CV146313FMOVBKX, 2015 WL

1 12681313, at *6 (C.D. Cal. Apr. 27, 2015) (same).

2     ***Fourth***, Walmart's strange, conclusory argument that Plaintiff cannot submit
3 new or undisclosed damages theories is misplaced. (Dkt. No. 269 at 9-10).
4 Plaintiff's damages theories have not changed, nor does Walmart identify any new
5 theories. Walmart is just grasping at straws and making up facts.

6     **C. Walmart's "Amended" Motion *in Limine* No. 3**

7     Walmart's motion *in limine* should be denied for all of the reasons stated in
8 Plaintiff's opposition. (Dkt. No. 207). In short, Plaintiff disclosed both her own
9 sculptural lamps and the infringing lamps at the outset of the case (including in the
10 Complaint, Rule 26(a) disclosures, etc.), Walmart never requested inspection of the
11 lamps during discovery, Magistrate Judge Chooljian did not order production of the
12 lamps, and in any event, Plaintiff made the lamps available for inspection in
13 September 2021 as part of the pretrial exchanges of trial exhibits. In its "amended"
14 motion, Walmart now doubles-down on its factual distortions, again wrongly
15 arguing that it somehow requested inspection of the lamps during discovery and
16 wrongly arguing that Plaintiff has denied Walmart's inspection requests. These
17 arguments are vexatious and belied by the record.

18     For example, Walmart again re-casts its discovery requests, this time
19 contending that Plaintiff should have divined that Walmart was seeking an
20 inspection of the lamps because "Rule 34 includes 'tangible things.'" (Dkt. No. 270
21 at 3). But Walmart's RFP's asked for "documents" (lower case), not "tangible
22 things." Walmart cites no authority (or even a reasoned argument) for why Plaintiff
23 should have understood its request for "documents" to include an inspection of the
24 lamps. Nor does Magistrate Judge Chooljian's discovery order mention anything
25 about inspecting sculptures. (Dkt. No. 101).

26     Walmart's MIL relies on Rule 37, which is premised on a "failure to make
27 ***disclosures***." There is no question that, from the outset of the case, Plaintiff
28 ***disclosed*** the existence of these physical exhibits. The fact that Walmart never

asked to inspect them during the discovery period does not mean that Plaintiff failed in her *disclosure* obligations.

More fundamentally, Walmart *did* conduct an inspection of the lamps on September 13, 2021 as part of the pretrial exchanges. Now, after raising no further issues over the past nine months, Walmart complains that the lamps were "bundled together" and the infringing lamp was not assembled to their liking. (Dkt. No. 270 at 5). If Walmart had a problem with the inspection, it should have raised that with Plaintiff's counsel in the moment, so that these complaints could have easily been addressed right away. But it did no such thing—counsel for Walmart just said they finished the inspection and left Plaintiff's counsel's office (Papazian Decl. ¶¶ 3-4), apparently content with crying foul rather than actually inspecting the lamps.

Walmart also claims that Plaintiff has continued to deny its requests to inspect the lamps. Walmart is not being truthful. In between the September 13, 2021 inspection and May 17, 2022, Walmart did not once ask another inspection of the lamps. (Papazian Decl. ¶ 5). Even setting aside the fact that discovery has remained closed in the interim, when the parties met and conferred on May 17, 2022, Plaintiff asked Walmart to withdraw the instant motion since an inspection had already occurred. In that context, it was Plaintiff who *invited* Walmart to further inspect the lamps if it wants to do so. (*See* Dkt. No. 270-16 at 3 (Walmart's counsel confirming that Plaintiff offered to make the sculptures available for inspection)). But Walmart balked, insisting that Plaintiff must essentially re-open fact and expert discovery for the inspection to proceed. (*Id.*).

Walmart's counterfactual motion should be denied.

### D. Walmart's "Amended" Motion *in Limine* No. 4

Walmart's motion *in limine* should be denied for all of the reasons stated in Plaintiff's opposition. (Dkt. No. 208). In short, Mr. Blum is credible, his methodologies are sound (and unchallenged), and his opinions easily pass muster under Rule 702 and *Daubert*. Even so, having read Plaintiff's September 20

Opposition, Walmart launches a revamped broadside attack against Mr. Blum in its "amended" MIL 4. Plaintiff addresses these new arguments below.

**Opinion #1 (Actual Damages).** *First*, Walmart now claims Mr. Blum's testimony is inadmissible because he declined to accept Walmart's "four sales" theory of the case. But far from "burying his head in the sand," as Walmart alleges, Mr. Blum analyzed Walmart's sales records and found them to be unreliable because they were manipulated. (Blum July 24 Rpt. ¶ 66; Ex. G (Blum Dep. Tr.) at 157:18-24 ("if one part of this document has been manipulated, then there is a high risk if not likelihood that there's been other manipulations of the document . . .")). Mr. Blum is not required to accept Walmart's suspicious records. (*See* Dkt. No. 162 at 4-5 (Court noting that "Plaintiff disputes [the sales figures], arguing that Walmart has failed to provide reliable sales data, and has continued to alter the total number of sales throughout this litigation.")). More fundamentally, **Walmart's sales** need not be used to estimate **Plaintiff's lost profits**. *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, 923 F. Supp. 2d 1245, 1254 (S.D. Cal. 2013) (rejecting theory that "plaintiff's lost profits case be based solely upon the number of the Defendants' sales").

*Second*, Walmart now claims that Mr. Blum failed to "base any estimate of Plaintiff's actual damages on the 'proximate cause' of any damages to Plaintiff." (Dkt. No. 271 at 4-5). But Walmart just ignores Mr. Blum's actual opinions. Mr. Blum applies the widely accepted "before and after" methodology[5] to his lost profits analysis and dedicates several paragraphs to explaining why that is appropriate. (*See* July 24 Rpt. ¶¶ 57-63). For example, "a customer who views [Walmart's] lower-priced options would no longer attribute the same value to Plaintiff's sculptural works." (*Id.* ¶ 62). Mr. Blum further explains that this is particularly so here because Walmart "uses images that appear to be similar, like or perhaps the

---

[5] *See Brighton*, 923 F. Supp. 2d at 1254.

same as Plaintiff's images," and "buyers for Plaintiff's sculptural works would diminish as a result of the listings on Walmart.com." (*Id.*) Walmart refuses to engage with any of this substance—instead, it ironically dismisses Mr. Blum's opinions as *ipse dixit* without explaining why.

***Third***, Walmart's causation arguments regarding sales increases and decreases are not grounds for *Daubert* exclusion. Walmart is free to challenge Mr. Blum's conclusions from the data on cross-examination, but the focus here "must solely be on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

**Opinion #1 (Walmart's Profits).** As Plaintiff explained in her original opposition, Walmart, not Mr. Blum or Plaintiff, is statutorily tasked with deducting its costs and apportioning its revenue to show just the profits attributable to the infringement. (Dkt. No. 208 at 4). The Court has already told Walmart as much in rejecting this argument on summary judgment. (Dkt. No. 162 at 22 ("It is Walmart's burden under § 504(b) to establish that other factors contributed to its revenue and to what extent these other factors played a role.")). Undeterred, Walmart's "amended" MIL 4 redoubles its attack on Mr. Blum, claiming that his reliance on Walmart's revenue figures is not a "reasonable estimate attributable to the infringing conduct" and citing Walmart's expert who disagrees with Mr. Blum. None of this is a basis to preclude Mr. Blum from testifying—Walmart failed to provide any apportionment or any data to do so. (*See* Dkt. No. 162 at 22). Mr. Blum is merely accepting Walmart's revenue figures in his damages calculations.

**Opinion #2 (Corrective Advertising)**. Walmart further expands its challenge to Mr. Blum's corrective advertising opinion, claiming that his inputs are not "tied to the facts of the case" because he used Ms. Russell's lamp-specific sales conversion rate instead of Walmart's site-wide sales conversion rate. (Dkt. No. 271 at 7-8). Specifically, for his "corrective advertising" opinion, Mr. Blum calculates how many people viewed the Accused Listings by using Ms. Russell's product-

specific "conversion rate," which is the percentage of views of her products that result in sales. Walmart's expert performs the same analysis but uses Walmart's site-wide conversion rate that is not specific to any category of products. In other words, the experts agree on the methodology and formula, but disagree on the inputs. The question of which expert's inputs is most appropriate is not a *Daubert* issue—Mr. Blum's use of Plaintiff's conversion rate is obviously "tied to the facts of the case." This new attack also fails.

Walmart's new arguments, just like its old ones, should be rejected.

### E. Walmart's "Amended" Motion *in Limine* No. 5

Walmart's motion *in limine* should be denied for all of the reasons stated in Plaintiff's opposition. (Dkt. No. 209). Namely, Ms. Russell is qualified to testify on her sculptures and the infringing products, her Rule 26(a)(2)(C) disclosure is sufficient, and Walmart waived its "conflict of interest" challenge.

Walmart relies on *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHX), 2014 WL 10894452, at *6 (C.D. Cal. Oct. 31, 2014) to argue Ms. Russell should be precluded from testifying in an expert capacity due to her financial stake in this case as the Plaintiff. Ms. Russell explained in her September 20, 2021 Opposition that Ninth Circuit precedent establishes that a party's interest in an action "would affect the weight, not the admissibility of the testimony." (Dkt. No. 209 at 2 (citing *Ralston-Purina Co. v. Bertie*, 541 F.2d 1363, 1367 (9th Cir. 1976)).

Since the last round of briefing, the Ninth Circuit has **re-affirmed** Plaintiff's view. In October 2021, the Ninth Circuit confirmed (in an unpublished opinion) that *Ralston-Purina* stands for the proposition that a party's "interest in the action would affect the weight, not the admissibility of his testimony as an expert witness." *Washington v. Essex*, No. 18-16644, 2021 WL 4922373, at *1 n.1 (9th Cir. Oct. 21, 2021) (affirming district court's decision to allow defendant doctors to testify as experts). Walmart does not address either of these Ninth Circuit authorities.

Further, early this year, another court rejected nearly the exact same "conflict

of interest" arguments raised by Walmart. Namely, in *Maritech Marine Servs., LLC v. Bay Welding Servs., Inc.*, No. 3:20-CV-00231-SLG, 2022 WL 138677, at *2 (D. Alaska Jan. 14, 2022), the plaintiff (relying on *Perfect 10*) sought to preclude the defendant's owner from testifying as an expert because he had "a direct financial stake in the outcome of [the] case." *Id.* The Court rejected Plaintiff's argument, distinguishing *Perfect 10* because, unlike the alleged expert in that case, the proffered expert in *Maritech* "does not 'almost certainly lack the specialized knowledge relevant'" to the case. *Id.* The Court further held that the plaintiff's concerns about the expert's financial stake could be addressed in cross-examination "with the ultimate question of credibility to be determined by the trier of fact." *Id.* The Court here should likewise reject Walmart's challenge to Ms. Russell.

## IV.     CONCLUSION

Walmart's original and "amended" MILs should be denied in their entirety.

DATED: June 13, 2022          By: */s/ Steve Papazian*

                                                   Guy Ruttenberg
                                                   Steve Papazian
                                                   RUTTENBERG IP LAW, A PROFESSIONAL CORPORATION
                                                   1801 Century Park East, Suite 1920
                                                   Los Angeles, CA 90067
                                                   Telephone: (310) 627-2270
                                                   Facsimile: (310) 627-2260
                                                   guy@ruttenbergiplaw.com
                                                   steve@ruttenbergiplaw.com
                                                   *Attorneys for Plaintiff Roxy Russell, d/b/a Roxy Russell Design*