Jeremy T. Elman (SBN 223696)
jelman@duanemorris.com
Jennifer M. Lantz (SBN 202252)
jmlantz@duanemorris.com
Duane Morris LLP
260 Homer Avenue
Palo Alto, CA 94304-1194
Telephone: (650) 847-4162
Facsimile: (650) 429-2109

*Attorneys for Defendants*
WALMART INC. AND WAL-MART.COM USA, LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION-LOS ANGELES

| | |
|---|---|
| ROXANA TOWRY RUSSELL, D/B/A ROXY RUSSELL DESIGN, | Case No. 2:19-cv-05495-MWF-JC |
| Plaintiff, | **WALMART'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND FULL COSTS** |
| v. | |
| WALMART INC., A DELAWARE CORPORATION; WAL-MART.COM USA, LLC, A CALIFORNIA LIMITED LIABILITY CORPORATION, | Date: August 21, 2023 |
| | Time: 10:00 a.m. |
| | Courtroom: 5A |
| Defendant. | Judge: Hon. Michael W. Fitzgerald |

DOCUMENT PROPOSED TO BE FILED
PARTIALLY UNDER SEAL

# CONTENTS

I. INTRODUCTION ............................................................................. 1

II. BACKGROUND ............................................................................. 1

III. LEGAL ANALYSIS ....................................................................... 7

IV. ANALYSIS .................................................................................... 8

    A.    Simply Being the Prevailing Party Does Not Entitle Plaintiff to Unreasonable Fees ................................................................. 8

    B.    Courts Must Balance Fee Awards Against Deterring Reasonable Defenses ................................................................ 9

        1.    Deterrence is Not Needed ................................................. 11

        2.    It Would Be Wrong to Deter Meritorious Defenses ............. 11

    C.    The Results Show That Walmart Was Objectively Reasonable In Defending This Case ................................................. 12

    D.    The Degree of Success Achieved by Plaintiff is Low .................... 15

        1.    Courts Award Fees in Line with the Success Achieved ......... 16

        2.    Recent Ninth Circuit Decision Emphasizes the Proportionality of Attorneys' Fees to Results ...................... 18

    E.    Plaintiff's Invoices Do Not Support the Amount Sought ............... 18

V. CONCLUSION ............................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Actuate Corp v. Aon Corp.,*
2012 WL 3627595 (N.D. Cal. Aug. 21, 2015)..............................................9

*Anthony California, Inc. v. Fire Power Co., Ltd.,*
2018 WL 5816169 (C.D. Cal. 2018) ................................. 11, 12, 16

*Antuna v. County of Los Angeles,*
2016 WL 11743321 (C.D. Cal. 2016)..............................................23, 25

*Bridgmon v. Array Sys. Corp.,*
325 F.3d 572 (5th Cir. 2003)..............................................12

*Brighton Collectibles, Inc. v. Coldwater Creek Inc.,*
2009 WL 160235 (S.D. Cal. Jan. 20, 2009)..............................................10

*Camacho v. Bridgeport Financial, Inc.,*
523 F.3d 973 (9th Cir. 2008)..............................................19

*Chalmers v. City of Los Angeles,*
796 F.2d 1205 (9th Cir. 1986)..............................................20, 25

*City of Inglewood v. Teixeira,*
2015 WL 614629 (C.D. Cal. 2015).............................................. 6, 19

*Creative Computing v. Getloaded.com LLC,*
386 F.3d 930 (9th Cir. 2004)..............................................21

*Drop Stop LLC v. Jian Qing Zhu,*
2018 WL 1407031 (C.D. Cal. 2018), *aff'd* 757 F. App'x 994 (Fed
Cir. 2019, nonprecedential)..............................................19

*Epikhin v. Game Insight N. Am.,*
2016 WL 1258690 (N.D. Cal. 2016)..............................................12

*Ets–Hokin v. Shy Spirits,*
323 F.3d 763 (9th Cir. 2003)..............................................8

*Fogerty v. Fantasy, Inc.,*
510 U.S. 517 (1994) ............................................ *passim*

*Glacier Films (USA), Inc. v. Turchin,*
896 F.3d 1033 (9th Cir. 2018)..............................................17

*Greg Young Publishing, BWP Media USA Inc. v. Rich Kids Clothing
Co., LLC.* 103 F. Supp. 3d 1242 ..............................................3

*Greg Young Publishing, Inc. v. Zazzle, Inc.,*
2018 WL 1626053 (C.D. Cal. 2018).............................................. 9, 17

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ............................................................................... 9

*Ingram v. Oroudjian,*
    647 F.3d 925 ......................................................................................... 3

*Intel Corp. v. Terabyte Int'l,*
    6 F.3d 614 (9th Cir. 1993) ................................................................. 19

*Kerr v. Screen Actors Guild,*
    526 F.2d 67 (9th Cir. 1975) ........................................................... 6, 11

*Kirtsaeng v. John Wiley & Sons, Inc.,*
    136 S. Ct. 1979 (2016) ..................................................... 7, 8, 12, 18

*Lanard Toys Ltd. v. Dimple Child LLC,*
    2020 WL 4032668 (C.D. Cal. 2020), aff'd, 843 F. App'x 894 (9th
    Cir. 2021) ............................................................................. 19, 20, 25

*Lowery v. Rhapsody International, Inc.,*
    2023 WL 3857499 (9th Cir., 2023) .................................................. 18

*Mattel, Inc. v. MGA Entm't,*
    705 F.3d 1108 (9th Cir. 2013) ............................................................ 9

*Milton H. Green Archives, Inc. v. Julien's Auction House,*
    LLC, 2007 WL 4898364 (E.D. Cal. Dec. 20, 2007), aff'd 345 F.
    App'x 244 .................................................................................... 15, 17

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.,*
    2014 WL 1724478 (N.D. Cal. 2014) ................................................. 14

*Mintz v. Mark Bartelstein and Associates, Inc.,*
    2013 WL 12182147 (C.D. Cal. 2013) ................................................ 24

*Odima v Westin Tucson Hotel,*
    53 F.3d 1484 (9th Cir. 1995) ............................................................ 16

*Randles Films LLC v. Quantum Releasing LLC,*
    2012 WL 13002173 (C.D. Cal. 2012) (Motion ) ......................... 14, 16

*Shame On You Productions, Inc. v. Banks,*
    893 F.3d 661 (9th Cir. 2018) ............................................................ 21

*SOFA Entm't, Inc. v. Dodger Prods., Inc.,*
    709 F.3d 1273 (9th Cir. 2013) .......................................................... 12

*T-Peg, Inc. v. Vermont Timber Works,*
    669 F.3d 59 (2d Cir. 2012) ............................................................... 12

*Telemasters, Inc. v. Vintage Club Association,*
    2008 WL 11343356 (C.D. Cal. 2008) ............................................... 16

*Unicom Sys., Inc. v. Farmers Grp., Inc.,*
    2009 WL 10670614 (C.D. Cal. June 29, 2009), *aff'd*, 405 F. App'x
    152 (9th Cir. 2010) ........................................................................... 17

*Ventura Content Ltd. v. Motherless Inc.*,
 2013 WL 12122569 (C.D. Cal. 2013) ................................................................. 11

*Viva Video, Inc. v. Cabrera*,
 9 F. App'x 77 (2d. Cir. 2001) ........................................................................... 15

*VMG Salsoul, LLC v. Ciccone*,
 824 F.3d 871 (9th Cir. 2016) ............................................................................ 13

*Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*,
 447 F.3d 769 (9th Cir. 2006) .......................................................................... 8, 9

**Statutes**

California Business & Professions Code § 17200 and (4) .................................... 1

Code §17200 ........................................................................................................ 22

Copyright Act ............................................................................................. *passim*

Copyright Act Section 505 ............................................................................. 7, 21

DMCA ................................................................................................................... 3

Lanham Act .............................................................................................. 3, 21, 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I. INTRODUCTION

Plaintiff seeks attorneys' fees of $1.6 Million in a case in which the jury awarded $75,000 in statutory damages on a copyright claim, and lost on all other claims. The request is unreasonable and unsupported.

Walmart, like many retailers, hosts an online platform on which third parties may post goods for sale. After a jury trial, Plaintiff prevailed on the limited basis that four sales were made from two listings on the platform, uploaded by a third-party, Sunsea Grocery ("Sunsea"), which Walmart promptly removed upon notice. Plaintiff lost on all claims that Walmart engaged in wrongdoing beyond hosting Sunsea's listings. The distinction is important, because should Plaintiff prevail on her motion for attorneys' fees of more than 20 times her statutory damages award, enormous fees could then be awarded against any online platform where third parties post goods for sale.

Awarding Plaintiff the full request for attorneys' fees is also unwarranted and disproportionate to the litigation result and would not effectuate the goals of the Copyright Act, and thus would not be a reasonable fee. Plaintiff was awarded less than 10% of her damages sought at trial, and only ███ of the amount she demanded during settlement discussions. If Plaintiff is entitled to any fees at all, it is at most 10% of the claimed fees, proportionate to the level of success achieved.

# II. BACKGROUND

## A.    Claims

In June of 2019, Plaintiff Roxana Towry Russell ("Plaintiff") filed the present action against Walmart, alleging that Walmart infringed her copyrighted photographs and sculptures by selling replicas of her sculptures through two listings on Walmart.com. Plaintiff also brought four other claims: (1) false designation of origin, (2) false advertising, (3) statutory unfair competition under

California Business & Professions Code § 17200 and (4) common law unfair competition that Plaintiff claimed included punitive damages.

B.      Walmart Removed Listings Promptly; Only Four Sales At Issue

Once Walmart received Plaintiff's demand letter of the alleged infringement on May 20, 2019, Walmart promptly removed the two listings (which generated four total sales) posted by third party Sunsea on the Walmart platform within nine (9) business days, by June 3, 2019, and they have not been live since that time. ECF 386, at 16-17 (evidence that Walmart quickly removed the accused listings). No sales were made between when Walmart received the demand and the removal of the listings. *See id.* (showing all sales made prior to May 20, 2019). Unfortunately, because Plaintiff sought a wholly unreasonable amount for these unexceptional claims, the parties did not settle the case prior to trial.

C.      Walmart Prevailed On Four of Five Claims, and the Jury Awarded
        Non-Willful Damages As to Jury Question No. 6

After a four-day jury trial in February 2023, Walmart prevailed on four of Plaintiff's five asserted claims, including punitive damages. *See* ECF 346 (Final Pre-Trial Order); *see also id.* at 4:16-15:8 (citing the elements and alleging "key evidence" in support of five different claims). [1]

At trial, on her copyright claim, Plaintiff sought $541,486 in actual copyright damages plus prejudgment interest, or $750,000 for statutory damages, including for willful infringement. *See* Declaration of Jeremy T. Elman ("Elman Decl."), Ex. A, 2/9/23 Tr., at 608, 657-58. On Questions 1-5, the jury found Walmart liable for direct or vicarious or contributory infringement (Question 1), awarding Plaintiff $22,000 in actual damages (Question 3), $5,000 for Walmart's profits (Question 4), or alternatively, the median statutory damages amount for

---

[1] The Final Pre-Trial Order superseded the pleadings and was signed by the Court. *See id.* at 19:5-8.

non-willful infringement of $15,000 per work (Question 6).  Plaintiff opted for the $15,000 in statutory damages, for a total of $75,000.  The jury did not find willful infringement.  ECF 364.

Plaintiff did not prevail on any other claim, including for the $99,530 in corrective advertising she sought under the Lanham Act, or punitive damages for a purported "cover up."  *See* Elman Decl., Ex. A, at 480 (Court statement that Plaintiff separated the unfair competition claims in the hopes of getting punitive damages); 706-707 (claiming punitive damages were warranted for a "cover up").  On Question 8, the jury ruled against Plaintiff's false advertising claim, which the Court instructed included both her claims for false designation of origin and false advertising.  ECF 374, at 5, 7.  On Question 9, the jury ruled against Plaintiff's unfair competition claim, which the Court instructed included both her California statutory and common law claims and punitive damages.  *See id.* at 4-7.  The jury indicated "NONE $0.00" for Plaintiff's damages on those four claims, so Plaintiff should not be entitled to any fees related to those four claims or punitive damages. *See id.* at 5.  Plaintiff did not move to disturb those rulings or appeal them.

D.    Plaintiff's Limited Success at Trial In Light of Amount Sought

Plaintiff's overall success was limited.[2]  Plaintiff offered to settle the matter with Walmart for ███████████ just before trial[3], and asked the jury for $849,530

[2] Walmart has moved for judgement as a matter of law as to the copyright claims and the availability of the DMCA Safe Harbor.  ECF 386.

[3] Plaintiff may argue that Rule 408 communications are not admissible, but that is wrong.  In *Ingram v. Oroudjian*, the Ninth Circuit held that the district court did not err by considering settlement negotiations for the purpose of determining the degree of success for an attorney fee award in a Fair Housing Act case. *Ingram v. Oroudjian*, 647 F.3d 925. 927 (9th Cir. 2011). District courts have applied the *Ingram* ruling in copyright cases in deciding whether to award attorney fees. *See Greg Young Publishing, BWP Media USA Inc. v. Rich Kids Clothing Co.*, LLC. 103 F. Supp. 3d 1242. 1247 (W.D. Wash. 2015).  Moreover, Plaintiff opened the

in damages, yet recovered only $75,000 in statutory damages for non-willful copyright infringement, less than **10%** of her requested amount, and less than ▮▮ of the pre-trial settlement demand. *Compare* ECF 374, at 2-5 *with* Elman Decl., Ex. B (Trial Tr., 2/9/23)(seeking $849,530 in damages); Ex. C (Plaintiff's Jan. 31, 2023, ▮▮▮▮ settlement demand). If measured by actual damages, Plaintiff recovered **5%** of her actual damages sought, as the jury awarded her actual damages of $27,000 (out of $541,486, including $154,093 in her damages, $287,693 in Walmart's profits, and $99,530 in corrective advertising). ECF 374.

The Court similarly found that Plaintiff's unrelated claims that Walmart engaged in a "cover up" failed, and both instructed the jury to disregard such claims and granted judgement as a matter of law on punitive damages. *See* Ex. A at 706-708. Over Plaintiff's objections, the Court told the jury "[t]he contentions of the parties aren't that Walmart, itself, through its employees or through its lawyers, have been lying or committed fraud. The point here is that -- whether Walmart's systems were -- allowed bad conduct by somebody else, in this case, Sunsea." *See* Elman Decl., Ex. A, at 655. *See also id.* at 707:11-14 ("No rational jury could conclude that there was the corporate ratification necessary to justify punitive or exemplary damages.")). All Plaintiff's theories to punish Walmart, such as willful infringement and for punitive damages for the alleged "cover up," were soundly rejected by both the jury and the Court.

D. The Case Involved a "Fairly Moderate" Amount That Walmart Reasonably Sought to Resolve

The result reflected the Court's prediction at the January 25, 2023 final pretrial conference, that this case involved a "fairly moderate" amount. *See* Elman

---

door to this evidence by claiming that Walmart did not attempt to limit its exposure by making a settlement offer. Motion, at 24:18-22. Walmart tried to settle this case, as evidenced by hundreds of related entries on Plaintiff's invoices. Plaintiff's high settlement demands were the reason this case did not settle.

Decl., Ex. C (1/25/23 Pretrial Conf. Tr. At 42:10-16).  Thereafter, Walmart agreed to pursue the Court's many paths of resolving the matter, whether through (1) a stipulation akin to a "conditional plea," (2) a streamlined trial, and/or by (3) proper jury instructions narrowing the dispute. *See id.* at 42-45, and specifically at 44:15-16.)  Walmart proposed stipulating to non-willful infringement, per the Court's proposal, because a "matter involving a vendor placing items worth a total of less than $200 in sales on an online platform should not devolve into lengthy litigation and a jury trial when the facts are not reasonably in dispute."  ECF 336, at 7:7-8:3.

Walmart was correct to stand on its rights, as Plaintiff's lowest settlement offer in this case was ▇▇▇▇▇, made to Walmart on October 22, 2019 (Elman Decl., Ex. D (Plaintiff's October 22, 2019 email claiming she had made a ▇▇▇▇ settlement demand))[4], going up to ▇▇▇▇▇ on January 31, 2023 (Ex. B), right before trial.  Even Plaintiff's earliest settlement offer was significantly higher than the jury award, and the pre-trial offer was more than ▇▇▇▇ higher than the highest of the two jury awards.  Walmart predicted correctly that the jury would agree that Plaintiff did not deserve the windfall she sought, correctly predicted a finding of non-willful infringement, and correctly predicted that a modest amount would be the correct measure of damages based on the facts.  *See* ECF 336, at 7:12-8:4.

E.     The Hours Expended By Plaintiff's Counsel Were Not Reasonable

Walmart does not agree that an award of attorney fees is merited in light of the above facts.  Plaintiff could have submitted a simple, online takedown request on Walmart.com when she hired attorneys on January 28, 2019, just six days after Sunsea uploaded its two listings.  *Compare* ECF 410-1, Motion, Ex. A (first entry

---

[4] On March 25, 2020, Plaintiff formally sent a letter to Walmart seeking the same amount.  Elman Decl., ¶ 5.

on Jan. 28, 2019); *with* ECF No. 386-6, 386-7 (showing Sunsea posted listings on Jan. 22, 2019).

Plaintiff and her counsel chose to file this lawsuit and argue that, unless they are able to recover their full fees, the lawsuit is "economically impossible" for her (Motion, at 19). This implicitly concedes that this is a contingency case. Whether or not a case is a contingency fee case (and other economic factors) are factors that courts can assess in determining the reasonableness of the fee, among numerous other factors. *See Kerr v. Screen Actors Guild*, 526 F.2d 67, 70 (9th Cir. 1975). And contingency fee cases are precisely the sort of case in which a lawyer might feel free to work more hours since the client might not get stuck with a bill. *See City of Inglewood v. Teixeira*, 2015 WL 614629, *6 (C.D. Cal. 2015). As the Court said in *Teixera*, the nonmoving party "cannot be forced to pay for a Cadillac if a Chevy would have sufficed."

If the Court decides to award fees, the Court must review the billing entries to determine their reasonableness in light of many factors, as discussed below. Walmart reviewed each billing entry and made the following notations to aid the Court in its review (*see* Elman Decl., Ex. E):

- "Not Apportioned": Entries that either should be disallowed for unsuccessful claims, or reduced by Plaintiff's limited success if found related[5];
- "Vague": Not enough information provided to determine if fee was reasonable, and should be disallowed or reduced;
- "Block Billing": Not enough information provided by task to determine if fee for each tasks was reasonable, and should be disallowed or reduced;
- "Inefficiency": time spent on task was excessive, especially given that Plaintiff's counsel was motivated to raise the bill, and should be reduced;

---

[5] Since Plaintiff's entries failed to document the tasks properly, Walmart suggests an 80% reduction for entries that do not properly identify the claim at issue.

- "Duplicative": multiple lawyers charging for the same tasks, should be disallowed;
- "Clerical": not reasonable to charge as fees and should be disallowed;
- "Redundant of Invech": charging for tasks already done for Invech matter.

### III. LEGAL ANALYSIS

Under Section 505 of the Copyright Act, courts have discretion to award a prevailing party costs, including attorneys' fees. *See* 17 U.S.C. § 505 ("In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party .... [T]he court may also award a reasonable attorneys' fee to the prevailing part as part of the costs."). This broad statutory language "clearly connotes discretion" and "eschews any precise rule or formula for awarding fees," subject to two restrictions articulated by the Supreme Court. *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533–34 (1994)). First, a district court may not award attorneys' fees as a matter of course; rather, a court must make a particularized, case-by-case assessment. Second, a court may not treat prevailing plaintiffs and prevailing defendants any differently. *Id.* The court must "give substantial weight to the objective reasonableness of the losing party's position" while still providing "due consideration" to other factors. *Id.* at 1983.

In order to determine if a fee award is warranted in a particular instance, courts consider certain "nonexclusive" factors: "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence." *See Kirtsaeng*, 136 S. Ct. at 1986. The objective reasonableness of claims and defenses "carries significant weight," *Id.* at 1989, but "can only be an important factor in assessing fee applications—not the controlling one," *Id.* at 1988. The Supreme Court noted in *Kirtsaeng* that the objective-reasonableness approach "encourages parties with strong legal positions

to stand on their rights and deters those with weak ones from proceeding with litigation." *Id*. at 1986. In the Ninth Circuit, the case law establishes that courts may also consider the degree of success obtained and the purposes of the Copyright Act. *Ets–Hokin v. Shy Spirits*, 323 F.3d 763, 766 (9th Cir. 2003).

In applying these factors, courts should look to "the large objectives" of the Copyright Act, *see Kirtsaeng*, 136 S. Ct. at 1982, which "ultimately serves the purpose of enriching the general public through access to creative works," *Fogerty*, 510 U.S. at 527. The Court in *Kirtsaeng* emphasized that both plaintiffs and defendants help serve the purposes of the Copyright Act by litigating when either side had a strong or novel position. Therefore, the Court must analyze Plaintiff's Motion and the evidence it puts forth in support of its request for $1.6 Million in attorneys' fees in light of the relevant factors enumerated by the Supreme Court and the Ninth Circuit, as well as the broader objectives of the Copyright Act. Under this analysis, Plaintiff is only entitled to limited fees (if to any at all), to reflect Plaintiff's overall lack of success in the case, Walmart's assertion of meritorious defenses, and the defects in the bills themselves.

## IV. ANALYSIS

### A.      Simply Being the Prevailing Party Does Not Entitle Plaintiff to Unreasonable Fees

Walmart does not dispute that the jury found in Plaintiff's favor on the copyright claim, although Walmart is seeking to have that verdict set aside. *See* ECF 386. If Walmart's Renewed Motion for Judgement as a Matter of Law is granted, Plaintiff's Motion for Attorneys' Fees and Full Costs will be moot, as they will not be a prevailing party. Because that determination has not yet been made, Walmart hereby opposes Plaintiff's fee motion.

Plaintiff cites *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769 (9th Cir. 2006) for the proposition that "The plaintiff will ordinarily be

regarded as the prevailing party if [s]he succeeds at trial in establishing the defendant's liability, even if the damages awarded are nominal or nothing." *Id*. at 787. *See* Motion at p. 17. While Walmart does not contest that the jury awarded Plaintiff either 3% (for actual damages) or 10% (for statutory damages) of her claimed copyright damages, it is instructive to note that *Wall Data* does not support Plaintiff's excessive fee request. In *Wall Data*, the district court awarded $516,271 in attorney's fees out of $1.5 million requested and $38,000 in costs out of $150,000 requested. *Id*. at 776. Therefore, even from the cases cited by Plaintiff, it is clear that being the prevailing party is not enough to be awarded unreasonable fees. Indeed, in some cases, prevailing parties are awarded no fees at all. *See Greg Young Publishing, Inc. v. Zazzle, Inc.*, 2018 WL 1626053 (C.D. Cal. 2018) (denying all fees to a prevailing Plaintiff where Plaintiff's success was limited and Defendant's positions were objectively reasonable) (*citing Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)(vacating and remanding a fee award where the district court failed to "properly consider the relationship between the extent of success and the amount of the fee award").

B.     Courts Must Balance Fee Awards Against Deterring Reasonable Defenses

"The most important factor in determining whether to award fees under the Copyright Act, is whether an award will further the purposes of the Act." *Mattel, Inc. v. MGA Entm't,* 705 F.3d 1108, 1111 (9th Cir. 2013). "The primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public." *Fogerty*, 510 U.S. at 524. But courts also recognize that an award of fees to Plaintiff would also deter defendants who have reasonable defenses and litigate their defenses through trial. *See Actuate Corp v. Aon Corp.*, 2012 WL 3627595, at *1 (N.D. Cal. Aug. 21, 2015) (noting that a successful defense furthers the purpose of the Copyright Act). Courts must

balance these competing aims.  Walmart does not believe that a large fee award supports the aims of the Copyright Act, as it would merely discourage online platforms from defending themselves, driving consumer costs higher.

Plaintiff cites *Brighton Collectibles, Inc. v. Coldwater Creek Inc.*, 2009 WL 160235 (S.D. Cal. Jan. 20, 2009) to support the position that a subsidiary goal of the Copyright Act is "to serve the purpose of encouraging private enforcement and deterring infringements." *Id*. at *3. While the quote itself is accurate, the facts of the case undermine Plaintiff's request for full fees in this case.  In *Brighton*, the jury found for Plaintiff on multiple counts of trademark and copyright infringement, as well as other counts. The jury found that Defendant "willfully infringed [Plaintiff]'s asserted trade dress and engaged in common law unfair competition with malice, fraud or oppression" and awarded Plaintiff $2,652,000 in actual damages and $675,000 in wrongful profits. *Id*. at *2. For the copyright counts, the jury found that Defendant willfully infringed Plaintiff's copyrights, awarding actual damages of $3,241,000 and wrongful profits of $824,000. *Id*. at *3. The court concluded that this was an "exceptional case" and that the plaintiff "succeeded on its claim for willful infringement . . . and was awarded significant damages." *Id*.at *2-3. Further, only one of the plaintiff's claims was dismissed. *Id*. As a result, the court found Plaintiff "obtained a high degree of success," and found the fees requested by plaintiff ($1,235,404) were reasonable where Plaintiff "obtained excellent results." *Id*. at *4.

None of that was found in this case.  There was no finding of willful infringement, no award of significant damages, and the jury only awarded the median amount of statutory damages for non-willful infringement, against an online platform selling third-party goods.  And even in *Brighton*, an "exceptional case," the fees were less than those requested here.  Therefore, the outcome in *Brighton* does not support a similar outcome in this case.

1.  Deterrence is Not Needed

One of the functions of fee awards is, where appropriate, to deter infringement. The jury did not find any willful infringement here, which is typically the sort of behavior that merits deterrence. *See Ventura Content Ltd. v. Motherless Inc.*, 2013 WL 12122569, at *4 (C.D. Cal. 2013) ("there is no need for deterrence when neither party has any improper motivation in litigating a case, both parties have an important economic interest, and the matter of the litigation has some importance for Copyright law."). Walmart removed the listing at issue here within nine business days of receiving the initial notice that Plaintiff believed there was infringing material on Walmart.com. *See* ECF 386-17, 386-18 (showing prompt removal). Walmart does not need to be further deterred to effectuate the purposes of the Copyright Act.

Plaintiff claims the "world's biggest company" should pay her fees because it is "economically impossible" for small artists to be vindicated. *See* Motion, at 19:10-25. But such an award would encourage litigation against big companies, where lawyers representing claimants with modest claims would run up huge fees in expectation of full payment, in violation of the *Kerr* factors limiting contingency litigation fees where the attorney has no incentive to refrain from billing. *See Kerr*, 526 F.2d at 70.

2.  It Would Be Wrong to Deter Meritorious Defenses

Courts have recognized that they must balance compensation with unwarranted deterrence of meritorious defenses. Particularly instructive is the decision in *Anthony California, Inc. v. Fire Power Co., Ltd.*, 2018 WL 5816169 (C.D. Cal. 2018), which is similar in some respects to this case. In that case, plaintiff sought damages for copyright infringement and other claims based on allegedly infringing lamp designs. While plaintiff prevailed on some copyright claims, it lost on others, and the jury found willful infringement (which was not

found in this case) and awarded plaintiff $75,761.80 in statutory damages, similar to this case, as well as other damages relating to other claims (which did not occur in this case). Plaintiff's attorneys sought $536,557.50 in fees, much less than Plaintiff seeks here. The court ultimately awarded Plaintiff 20% of the requested amount, holding that the full requested amount was unreasonable for several reasons, including work done on claims that Plaintiff lost that could not be easily apportioned from the submitted invoices, and also proportionality to the overall award to the plaintiff. In addition, the Court found that this reduced award "balances the need to compensate plaintiffs for protecting their valid copyrights and the desire not to deter defendants with credible defenses in a manner that serves the purposes of the Copyright Act. *Id.* at *5. Numerous other courts have made similar assessments. *See, e.g., T-Peg, Inc. v. Vermont Timber Works*, 669 F.3d 59, 63 (2d Cir. 2012) (affirming district court's application of Fogerty factors and award to prevailing defendants of approximately 15% of requested attorneys' fees and costs); *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 578 (5th Cir. 2003) (affirming district court's balance of *Fogerty* factors and award of attorneys' fees to prevailing party of approximately 28% of requested fees).

  For these reasons, the deterrence factors, both deterrence of infringement and potential deterrence of meritorious defenses, weigh in favor of Walmart.

  C. The Results Show That Walmart Was Objectively Reasonable In Defending This Case

  The Court must give "substantial weight" to the reasonableness of the non-prevailing party's litigating position. *Kirstsaeng*, 136 S. Ct. at 1989. A claim is objectively unreasonable where the party advancing it should have known from the outset that its chances of success in the case were slim to none. *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013). *See also*, *Epikhin v. Game Insight N. Am.*, 2016 WL 1258690, at *5 (N.D. Cal. 2016) (a claim may

become objectively unreasonable "if the litigant continues to pursue it when the litigant knew or should have known that the chance of success was slim to none."). But the actual results show that Walmart's chances of success were good: Walmart's positions allowed it to prevail on most claims and limited its liability to a sliver of the ███████ settlement demand and to less than 10% of the $849,530 sought at trial.

      1.    Plaintiff's Argument That Walmart Was Unreasonable Is Factually Inaccurate

In an attempt to show that Walmart was unreasonable, Plaintiff argues that the Court "roundly rejected and criticized Walmart's factual and legal arguments" (Motion at pp. 20-21) – in fact, the opposite happened. The Court stated in August 2020, almost three years ago, that the evidence could be read to state that "Sunsea uploaded the photographs" and that "Walmart played no role in uploading the photographs," and that Sunsea sold the four lamps. See ECF 135, at 17. Walmart's contentions were true, including the veracity of the business records that Plaintiff claimed were the result of "fraud" and "cover up," a characterization which the Court rejected and criticized. *See* Ex. A, at 706-07. Walmart's legal position that its liability was not high was also correct. ECF 374.

When a court weighs whether to grant attorneys' fees, a legal argument that loses, such as that Plaintiff's copyright was invalid, is not necessarily unreasonable. *See, e.g., VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 887 (9th Cir. 2016); *Seltzer*, 725 F.3d at 1181. The fact that a party loses on a defense is insufficient to establish objective unreasonableness. Walmart never lost on the case-dispositive issue that Walmart had limited liability for Sunsea's acts and that damages were limited.

      2.    Plaintiff's Settlement Demands Were Unreasonable

Plaintiff's lawyers have simply sought an enormous payout.  Plaintiff's first written settlement offer was for ▮▮▮▮▮, first communicated to Walmart as part of an offer to settle the *Invech* case and later made directly to Walmart.  Plaintiff's final pretrial offer was ▮▮▮▮▮▮▮.  In light of these unreasonable demands, and in light of Walmart's assessment of the facts, it was reasonable for Walmart to zealously defend itself when the jury awarded Plaintiff somewhere between ▮▮▮ ▮▮ of her demand.  Plaintiff attempts to rely on *Randles Films LLC v. Quantum Releasing LLC*, 2012 WL 13002173, at *2 (C.D. Cal. 2012) (Motion at p. 22), but that case awarded fees where plaintiff's recovery was four times <u>greater</u> than defendants' highest settlement offer, not 10% or less as here.

Awarding fees against an online platform whose infringement was not found to be willful, especially an enormous $1.6 million, defeats the purpose of the Copyright Act, which encourages meritorious defenses. *See Minden Pictures, Inc. v. John Wiley & Sons, Inc.,* 2014 WL 1724478 (N.D. Cal. 2014)("[I]t is not the purpose of the Copyright Act 'to deter litigants from bringing potentially meritorious claims, even though those claims may be ultimately unsuccessful.'"). "Defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Fogerty*, 510 U.S. at 527.

### 4. Plaintiff's Assertions Regarding Unreasonable Litigation Conduct By Walmart Are Wholly Untrue

Plaintiff is wrong that fees should be awarded because of Walmart's litigation positions.  This was a hotly-contested case where the Court noted "[i]n sum, the parties do not agree on much." ECF 163, at 2-5.  To be clear, Walmart strenuously disagrees with Plaintiff's irrelevant and heavy-handed recitation of the events in the case.  *See* Motion, at 1-13, 15-16, 19-20.  Walmart denies any

allegation that Walmart's defense was unreasonable and merits a fee award, and it did not "misrepresent key facts", threaten "criminal prosecution," attack plaintiff, abuse the pre-trial disclosure process, delay trial, or engage in any "threatened scorched-earth litigation," and its witnesses were not "impeached." Walmart denies all of these unfounded accusations. There were never any sanctions against Walmart and all such attempts failed. Walmart notes that it refrained from bringing counterclaims, dropped most of its affirmative defenses early, took only three depositions, and filed one motion to compel. Walmart has previously informed the court of Plaintiff's own questionable litigation tactics so that the Court would have a clear record of what transpired. ECF 278, at 35-36. However, Walmart will refrain from enumerating those here. The focus of this inquiry should be on whether Walmart asserted reasonable arguments in its defense. *See Viva Video, Inc. v. Cabrera*, 9 F. App'x 77, 80 (2d. Cir. 2001) (noting "'objective unreasonableness' is generally used to describe claims that have no legal or factual support" and litigation misconduct is "more properly labeled 'bad faith'"). Walmart stands by its arguments, defenses and the results.

When rationally examined, it is clear that Walmart's defense of this case was objectively reasonable, which favors a low fee award, or no award at all.

D.    The Degree of Success Achieved by Plaintiff is Low

The degree of success achieved by the party seeking fees is "[t]he most critical (albeit not the only) factor in calculating the reasonableness of fees to be awarded . . ." *Milton H. Green Archives, Inc. v. Julien's Auction House*, LLC, 2007 WL 4898364, *2 (E.D. Cal. Dec. 20, 2007), aff'd 345 F. App'x 244 (9th Cir. 2009. Despite many pages of hand waving about perceived litigation tactics, Plaintiff presents only two paragraphs arguing that this factor weighs in her favor (Motion at 22:22-23:8, ECF 410-1). When looked at realistically, stripped of Plaintiff's advocacy, "full compensation" after losing most claims and recovering

only $75,000 is excessive. *Odima v Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995) ("If the plaintiff obtained 'excellent results,' full compensation may be appropriate, but if only 'partial or limited success was obtained, full compensation may be excessive.") (citations omitted).

As discussed above, Plaintiff cited *Randles* in support of its position.  But *Randles* held that recovering four times the settlement proposal is a high degree of success.  *Randles*, 2012 WL 13002173, at *2.  Conversely, recovering 10% of Plaintiff's damages sought is a low degree of success.  While Plaintiff sought maximum damages for willful infringement for each of her purported lamp designs and photographs, the jury declined to make such a finding, instead awarding Plaintiff much less, with no finding of willful infringement. Therefore, Plaintiff actually achieved a low degree of success, and any fee award should reflect that.

1.   Courts Award Fees in Line with the Success Achieved

Where Plaintiffs have had only limited success on copyright claims, courts have routinely reduced the requested fees substantially to reflect that limited success, including declining to award fees.  A few relevant cases are summarized below:

- In *Anthony California, Inc. v. Fire Power Co., Ltd.,* 2018 WL 5816169 (C.D. Cal. 2018), the jury found that defendants willfully infringed two lamp copyrights and intentionally interfered with plaintiff's prospective economic advantage.  Nonetheless, because defendants also prevailed on claims and the jury awarded only 25% of the maximum damages and only 8.4% of the total award sought, the court found that plaintiff achieved a low degree of success.  The court awarded 20% of the total requested fees, $106,467.75 out of the requested $536,557.50.

- In *Telemasters, Inc. v. Vintage Club Association*, 2008 WL 11343356 (C.D. Cal. 2008) at *3-4, the plaintiff prevailed on only on 4 of 11 claims

and was awarded $35,000.  Plaintiff sought $530,329.13 in fees, but the court determined that the requested fees were unreasonable "[i]n light of Plaintiff's lack of success on seven of the claims" and determined that the appropriate fee award was $50,000.

- In *Milton H. Green Archives, Inc. v. Julien's Auction House*, LLC, 2007 WL 4898364, *2 (E.D. Cal. 2007), aff'd 345 F. App'x 244 (9th Cir. 2009), plaintiff sought $2,900,000 in damages but the jury awarded only $34,875.97.  The court found that the "virtually negligible" degree of success achieved by plaintiff weighed against it, and decreased the fees requested on this and other grounds from $752,208.83 to $338,493.97, approximately 44% of the amount requested.

- In *Greg Young Publishing, Inc. v. Zazzle, Inc.*, 2018 WL 1626053 (C.D. Cal. 2018), the court found that, where plaintiff sought $2.1 Million in statutory damages at trial and was awarded $351,000, 16.7% of the amount sought, "plaintiff did not obtain a high degree of success" and based on this and the other factors, denied plaintiff's fee request entirely.

Plaintiff's cited cases are inapposite because they involved the defendant admitting liability or being found liable for extreme wrongdoing – factors not involved here.  *Unicom Sys., Inc. v. Farmers Grp., Inc.*, 2009 WL 10670614 (C.D. Cal. June 29, 2009), *aff'd*, 405 F. App'x 152 (9th Cir. 2010) (finding defendant surreptitiously procur[ed] the infringing product); *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1038 (9th Cir. 2018) (defendant stipulated that the conduct was "willful, intentional, in disregard of and indifferent to [Glacier's] rights with the intent to deprive [Glacier] of income and cause [Glacier] harm."). Plaintiff attempted to show Walmart acted willfully and intentionally – and failed.

The low degree of success on the copyright claim favors Walmart.  As a result, and in line with prior case law, Plaintiff should be entitled to at most ten

percent of the fees sought. Indeed, three percent would also be in line with her actual success.  As discussed below, however, there are reasons to further reduce the fees in light of the other factors to be considered.

> 2.  Recent Ninth Circuit Decision Emphasizes the Proportionality of Attorneys' Fees to Results

The Ninth Circuit has recently addressed excessive fee awards in a similar context, a copyright class action case, where plaintiffs' counsel sought fees of $6,000,000 yet the plaintiffs recovered a little over $50,000.  *Lowery v. Rhapsody International, Inc.*, 2023 WL 3857499 (9th Cir., 2023).  The district court authorized $1.7 million in legal fees, more than 30 times the amount received by plaintiffs.  On appeal, the Ninth Circuit held that fee award to be unreasonable, and remanded the case with directions to "ensure that the fees are reasonably proportional to the benefit received" by the plaintiffs, and particularly instructed the district court to cross-check the amount of fees against the award to the plaintiffs, and "If the cross-check reveals that a contemplated fee award exceeds 25% of the benefit to the class, the court should take a hard and probing look at the award because this disparity may suggest that the fee amount is unreasonable." *Id.* The fact that the lodestar fee award was "multiple times the settlement's value" "is a major red flag that signifies that lawyers are being overcompensated and that they achieved only meager success . . ." *Id.*  "Except in extraordinary cases, a fee award should not exceed the value that the litigation provided to the class."  *Id.*

> E.  Plaintiff's Invoices Do Not Support the Amount Sought

Moreover, even if fees are warranted, a district court may not award attorneys' fees as a matter of course. Instead, the Court must make a particularized, case-by-case assessment as to whether fees are warranted, and if so, in what amount. *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016) (*quoting Fogerty*, 510 U.S. at 533–34. The moving party has the burden to produce

evidence that the rates and hours worked are reasonable. *See Intel Corp. v. Terabyte Int'l*, 6 F.3d 614, 623 (9th Cir. 1993). "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citations omitted).

      1.    The Court Should Reject Plaintiff's Proposal and Closely Review Counsel's Invoices

Plaintiff did not meet the burden to show that the rates and hours worked are reasonable. This Court has not taken Plaintiff's proposed approach of simply accepting Plaintiff's counsel's invoices "based on an overall global understanding and review of a case" that was adopted in Plaintiff's counsel's prior patent case that was resolved via stipulation. In that patent case, the lower court found the case exceptional, and the parties settled – a situation completely unlike this one in which there was a jury trial and a low degree of success, as described *supra*. *See Drop Stop LLC v. Jian Qing Zhu*, 2018 WL 1407031 (C.D. Cal. 2018), *aff'd* 757 F. App'x 994 (Fed Cir. 2019, nonprecedential).

This Court has meticulously reviewed time entries (*see, e.g., Teixeira*) when deciding other fee motions, and Walmart urges the Court to do that here, following the test for determining reasonable hours articulated in *Lanard Toys*. This Court has noted that, even where a party prevails entirely and the other party's position was objectively unreasonable -- not the case here -- it may still be appropriate to reduce the claimed fees in the sort of case "in which a lawyer might feel free to work more hours since the client might not get stuck with a bill." *Teixeira*, 2015 WL 614629, at \*5. In addition, hours may be reduced by the court "where documentation of the hours is inadequate; if the case was overstaffed and hours are

1   duplicated; if the hours expended are deemed excessive or otherwise unnecessary."

2   *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).

3       Upon review of Plaintiff's invoices in this matter, it is clear that a fee award

4   should be limited, as Plaintiff's counsel is only entitled to reasonable amounts for

5   its low success on a single claim.

6           2.      Plaintiff Failed to Apportion Counsel's Invoices To Show

7                   Reasonable Fees

8       As stated in *Lanard Toys*, where a plaintiff prevails on some claims but not

9   others, the Ninth Circuit employs a two-part test for determining reasonable fees.

10  First, the Court asks whether Plaintiff's unsuccessful claims - that Walmart

11  engaged in active wrongdoing through willful infringement, false designation of

12  origin, false advertising, unfair competition or "oppressive" tactics (meriting

13  punitive damages) – were related to Plaintiff's successful claims.  Here the answer

14  is no – the nonwillful infringement as a passive, online platform is not related to

15  claims that Walmart engaged in wrongdoing, as they do not come from a common

16  core of facts.  Plaintiff argued for the separation and unrelatedness of these claims

17  when she sought enhanced damages. If unrelated, the award may not include time

18  expended on the unsuccessful claims.  *Lanard Toys Ltd. v. Dimple Child LLC*,

19  2020 WL 4032668, at *4 (C.D. Cal. 2020), aff'd, 843 F. App'x 894 (9th Cir. 2021)

20  (citation omitted).  Only if the claims are found to be related must the Court then

21  evaluate the "significance of the overall relief in relation to the hours reasonably

22  expended on the litigation."  *Id.*

23          1.      Plaintiff's Fees For Unsuccessful, Unrelated Claims Should Be

24                  Disallowed or Drastically Reduced

25      "[A] party entitled to attorney's fees as a prevailing party on a particular

26  [copyright] claim, but not on other claims in the same lawsuit, can only recover

27  attorney's fees incurred [for litigating] that one claim or any 'related claims.' "

28

*Shame On You Productions, Inc. v. Banks*, 893 F.3d 661, 669 (9th Cir. 2018) (citations omitted). "To determine whether the claims are related, the district court should focus on whether the claims on which [the party] did not prevail 'involve a common core of facts or are based on related legal theories.' " *Id.*

Despite previously denying that this case was based on "a common core of facts" between the copyright and "unfair competition" claims, Plaintiff now cites *Creative Computing v. Getloaded.com LLC*, 386 F.3d 930 (9th Cir. 2004) for the proposition that "[a]llocation is not required where there is a 'common core of facts' that requires substantially the same expense on prevailing and unsuccessful claims." *Id.* at 937. First, this case is inapposite, as the attorney's fees there were awarded as sanctions, not pursuant to 17 U.S.C. § 505. More importantly, though, based on her own arguments during this case, Plaintiff has no support that the claims were based on a common core of facts, and vigorously argued against that being the case. As a result, allocation is required, although Plaintiff did not do it.

In the Final Pre-Trial Order, Claim 1 was for copyright infringement, including willfulness. Plaintiff claimed that Walmart or Sunsea infringed the copyrighted works. *See* ECF 346, at 8:12-12:17. Presumably, Plaintiff could have apportioned time entries spent on proving that claim, and depending on the Court's evaluation of the relevant factors, could be entitled to a portion of time entries for her success on that claim.

However, Plaintiff had to prove different facts and theories to prevail on the argument that "Walmart attempted to hide the infringement," and that Walmart's business records were "altered". *See id.* at 12:18-14:1. In the invoices submitted, entries were not apportioned for efforts in proving these facts, even though Plaintiff apportioned others (claiming certain entries were "not sought"). For example, regarding Claim 2 (the Lanham Act claim), Plaintiff did not apportion counsel's time spent claiming that Walmart "falsely represented" that Plaintiff's

products were Walmart's by using "distinctive images," separate from the copyrighted photos. *See id.* at 14:2-13. In Claim 3, Plaintiff did not apportion counsel's time spent claiming that Walmart made "literally false" advertisements because the photographs do not match the products. *See id.* at 14:14-28. In Claim 4, Plaintiff did not apportion counsel's time spent claiming that Walmart "passes off its goods as those of Plaintiff," including by using Plaintiff's "reputation in the marketplace," which had nothing to do with copyright. *See id.* at 15:1-5. In Claim 5, Plaintiff did not apportion counsel's time spent claiming that Walmart violated California Business & Profession Code §17200 based on some unfair business act, not on the copyrighted works. *See id.* Plaintiff also insisted on separate jury instructions for each of the five claims requiring separate factual elements. ECF No. 358, at Instruction No. 26 (false advertising), 27 (unfair competition), 33 (separate damages instruction for false advertising or unfair competition).

At the Pretrial Conference, Walmart's counsel sought clarification as to whether the Court was allowing Plaintiff to proceed on a common core of facts about the listings. *See* Elman Decl., Ex. F at 33:9-13. The Court then asked, "In the plaintiff's view, what right is there to assert both the copyright interests and the trademark interests in regard to the photographs?" Plaintiff's counsel responded that Plaintiff was arguing that the copyright claim was different from the Lanham Act claims, stating "I don't think that is -- I don't think what Mr. Elman stated is a correct characterization of either our position or the law." *See* Elman Decl., Ex. F at 33:18-20.

Plaintiff made clear that she was arguing that the Lanham Act and other claims were not based on a common core of facts, but rather facts "separate and apart from the copyright" about "what Walmart has done":

"[Plaintiff's Counsel]: It's a passing off. It's a source of goods. And ***what Walmart has done is***, ***separate and apart from the copyright***,

what Walmart has done is led people to believe that the lamps that they are selling come from my client.

THE COURT: Right.   The lamps and the photographs might have contributed to that, but the specific point is, what Walmart said, is we believe that a trademark claim is being made to the photographs, and is seeking to understand whether that is the case.

"MR. RUTTENBERG: It's not.

"THE COURT: All right.   Then there is your answer."

*See* Elman Decl., Ex. F at 33:25-34:12.

The Court has even ruled that there was no common core of facts between the claims.  *See* ECF 324, at 28-30 (holding that Plaintiff's false designation of origin and passing off claims were separate from her copyrights claim because they were claims that Walmart "sold their own products (i.e., the alleged replica lamps) but passed them off as Plaintiff's lamps," and holding the punitive damages were available for unfair competition claims even though they were unavailable under the Copyright Act).   This is now the law of the case.

Now that the lack of apportionment by claim is clear, Plaintiff cannot go back and fix the invoices, although Plaintiff's counsel will undoubtedly argue that the majority of time spent on this case was for the copyright claim.   But that self-interested argument, unsupported by the evidence Plaintiff's counsel themselves created and submitted, cannot prevail.  *See, e.g., Antuna v. County of Los Angeles*, 2016 WL 11743321 *4 (C.D. Cal. 2016), (recognizing that declarations regarding reasonable rates were self-serving).[6]   If the claims are unrelated, any fee award may not include time expended on the unsuccessful claims, which Walmart has marked as "not apportioned."

---

[6] While *Antuna* is a civil rights case, not a copyright case, the fee evaluation is instructive, although the basis for the entitlement of fees is different.

In other cases in this district, parties who have prevailed on some but not all claims have assigned a percentage of each billed task to the prevailing claim, and courts have found that reasonable. *See Mintz v. Mark Bartelstein and Associates, Inc.*, 2013 WL 12182147 (C.D. Cal. 2013) (seeking 16.67% of hours billed where one of six claims were successful). Plaintiff could have done that here, but did not. Instead, Plaintiff seeks one hundred percent of the fees for time entries that clearly relate to multiple claims. Even in *Mintz*, where the court found the apportioning method reasonable, the court still reduced the fees further as it was the "[plaintiff's] burden to provide a reasoned estimate of the portion of time spent [on the successful claim]." *Id* at *3. Plaintiff's lack of detail should not benefit her.

Many of the unapportioned entries are also "vague" or contain "block billing," which Walmart has also noted. All of the "vague" entries should be disallowed, and a reasonable portion of the "block billing" entries should be disallowed, since the majority of work on this case was an unsuccessful attempt to raise damages by blaming Walmart for behavior beyond the third-party posting. Walmart has provided a roadmap to such reductions, and would be happy to submit further briefing.

Only if the Court finds that the unsuccessful claims are related to the copyright claim must the Court apply part two of the analysis and evaluate the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. As discussed above, Plaintiff is entitled to at most 20% of the fees claimed, to represent the one claim in five in which the jury found in her favor. In truth though, as discussed throughout this brief, she is entitled to even less since she only prevailed as to 10% of damages asserted at trial.

> 2. Plaintiff's Fees That Are Excessive Should Be Disallowed Or Drastically Reduced

As this Court has done many times before, including in *Antuna*, the requested fees should also be reduced because the case was overstaffed and hours are duplicated due to "inefficiency," "clerical" or "duplicative" work, since no client was monitoring the invoices in this apparent contingency matter. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (hours may be reduced by the court "where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary.).

Walmart has marked the entries in Plaintiff's invoices that reflect objectively unreasonable fees under the standards for fee motions, such as the 33 hours that Plaintiff's lead counsel billed for one day.  *See* Elman Dec., Ex. E at p. 120  The marked entries raise serious questions about the accuracy of Plaintiff's entries, and inefficiency and duplicative work by a series of lawyers on a claim for a "fairly moderate" amount, none of which should be compensable under the test laid out in *Lanard Toys*.

## IV.    COSTS

For all the reasons cited above, Plaintiff should also not receive the full amount of costs it seeks to recover.  Rather, any cost recovery should similarly be proportional to the success that Plaintiff has had in this case overall.

## V. CONCLUSION

While Plaintiff prevailed on one cause of action, that alone does not entitle Plaintiff's counsel to recover the full amount of fees claimed in Plaintiff's motion, $1.6 Million.   In light of the low level of success, and the fact that all other factors to be considered weigh in favor of Walmart, Walmart submits that, should the Court determine that Plaintiff is entitled to recover any attorney's fees at all, Plaintiff should recover no more than ███████ of the requested fees, or █████████ ███████.  This would be reasonable in light of the factors discussed above.

Dated: July 24, 2023

Respectfully submitted,

**DUANE MORRIS LLP**

By: */s/ Jeremy T. Elman*

Jeremy T. Elman
Jennifer M. Lantz

*Attorneys for Defendants*
WALMART INC. AND
WAL-MART.COM USA, LLC

## CERTIFICATE OF SERVICE

I am employed in the County of Santa Clara, State of California. I am over the age of 18 and am not a party to the within action. My business address is 260 Homer Avenue, Suite 202, Palo Alto, California 94301.

On July 24, 2023, I served the following:

**OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

(BY EMAIL) by electronically mailing a true and correct copy through Duane Morris LLP's electronic mail system at the e-mail address set forth below.

Guy Ruttenberg
guy@ruttenbergiplaw.com
Bruce D. Kuyper
bruce@ruttenbergiplaw.com
RUTTENBERG IP LAW,
A PROFESSIONAL CORPORATION
1801 Century Park East, Suite 1920
Los Angeles, CA 90067

Attorneys for Plaintiff

Honorable Michael W. Fitzgerald
United States District Judge
First Street Courthouse, 350 West First Street, Courtroom 5A,
Los Angeles, California 90012
mwf_chambers@cacd.uscourts.gov

Per Judge's Local Rules

I declare that I am employed in the office of a member of the bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the United States America that the foregoing is true and correct. Executed on July 24, 2023, at Palo Alto, California.

Susan Lei